No. 00-589

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 137

STATE OF MONTANA, acting by and

through the MONTANA DEPARTMENT

OF TRANSPORTATION,

Plaintiff and Appellant,

v.

JAMES A. SLACK and PATRICIA A. SLACK,

as owners and joint tenants, and FIRST

INTERSTATE BANK OF OREGON, as

mortgagee,

Defendants, Respondents, and

Cross-Appellants.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

James A. Lewis and Lyle Manley, Montana Dept. of Transportation,

Helena, Montana

P. Keith Keller, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.,

Helena, Montana

For Respondents and Cross-Appellants:

Dale L. McGarvey, McGarvey, Heberling, Sullivan & McGarvey, P.C.,

Kalispell, Montana

Submitted on Briefs: February 1, 2001
Decided: August 2, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The Montana Department of Transportation ("DOT") appeals from the Findings of Fact, Conclusions of Law and Judgment issued by the Eleventh Judicial District Court, Flathead County, awarding litigation expenses, attorney fees, and interest to James and Patricia Slack. The Slacks cross-appeal. We affirm in part and reverse in part.

¶2 The parties raise the following issues:

¶3 1. Whether the District Court's award of litigation expenses incurred through the settlement of the condemnation case was excessive.

¶4 2. Whether the District Court erred by awarding the Slacks their attorney fees incurred in proving the amount of reasonable and necessary attorney fees in the condemnation action.

¶5 3. Whether the Slacks are entitled to fees for post-trial work and for responding to

DOT's appeal.

## BACKGROUND

¶6 As part of a project to expand U.S. Highway 2 near Kalispell, Montana, into a four-lane highway, DOT sought to acquire a portion of a tract of land owned by the Slacks. DOT initially offered the Slacks $45,150. The Slacks refused and, on July 19, 1993, DOT filed a complaint seeking to condemn their property. The Slacks hired attorney Dale L. McGarvey to represent them. The Slacks entered into a contingency fee agreement with McGarvey providing that McGarvey would receive 40% of the entire recovery obtained by settlement or trial in excess of DOT's initial offer or 50% of the excess obtained on appeal or retrial.

¶7 The case proceeded toward a condemnation commission hearing scheduled for June 8, 1994. On May 19, 1994, DOT offered the Slacks $168,069 plus interest and necessary litigation expenses as defined by § 70-30-306, MCA. The Slacks accepted DOT's offer and judgment was entered. McGarvey submitted an Amended Memorandum of Litigation Expenses seeking a total of $41,657.03 in necessary litigation expenses incurred in the condemnation action. DOT filed a motion to retax fees and costs contending that the Slacks' litigation expenses were excessive, unnecessary, and unreasonable. On January 29, 1997, DOT offered the Slacks $26,000 to settle the Slacks' claim for necessary litigation expenses. On January 30, 1997, the Slacks filed a supplemental memorandum of litigation expenses requesting an additional $50,407.84 for expenses incurred in its action for fees.

¶8 The District Court held a total of five days of hearings devoted solely to the issue of the Slacks' necessary litigation expenses. The court issued its Findings of Fact, Conclusions of Law and Judgment on February 21, 2000, awarding the Slacks a total of $115,493 in litigation expenses and interest. With regard to the litigation expenses incurred through the settlement of the condemnation case, the court awarded the Slacks $46,577. Included in this amount was $29,483 for attorney and paralegal fees calculated at 1996 rates. The court also awarded the Slacks the litigation expenses they incurred after the settlement of the condemnation case in proving their necessary litigation expenses. With regard to their expenses incurred in the fee litigation, the court awarded the Slacks $62,547. DOT appeals the District Court's award of litigation expenses. The Slacks cross-appeal seeking fees for post-trial work and for responding to DOT's appeal.

## STANDARD OF REVIEW

¶9 We review a district court's findings of fact to determine whether they are clearly erroneous and a district court's conclusions of law to determine whether they are correct. *In re Estate of Silver*, 2000 MT 127, ¶ 16, 299 Mont. 506, ¶ 16, 1 P.3d 358, ¶ 16.

## ISSUE ONE

¶10 Was the District Court's award of litigation expenses incurred through the settlement of the condemnation case excessive?

¶11 As part of the settlement, DOT agreed to pay the Slacks' "necessary expenses of litigation as defined by Section 70-30-306, MCA." Section 70-30-306, MCA, provides in relevant part:

(1) Necessary expenses of litigation . . . mean reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs.

(2) Reasonable and necessary attorney fees are the customary hourly rates for an attorney's services in the county in which trial is held. Reasonable and necessary attorney fees shall be computed on an hourly basis and may not be computed on the basis of any contingent fee contract entered into after July 1, 1977.

¶12 DOT contends that the District Court's award of necessary expenses of litigation incurred in the settlement of the condemnation case was excessive because the court awarded attorney fees that were not reasonable and necessary. With regard to the settlement of the condemnation case, the District Court awarded the Slacks $29,483 in attorney and paralegal fees. DOT essentially makes two claims: (1) McGarvey's attorney and paralegal hours were excessive; and (2) the District Court should have used McGarvey's hourly rates in effect at the time he rendered services.

### A. HOURS

¶13 The District Court found that 151.05 attorney hours expended by Dale L. McGarvey, 3.25 attorney hours expended by John L. Heberling, and 204 paralegal hours expended by Mary K. Johnson were reasonable and necessary. DOT argues that the District Court awarded an excessive number of hours given the fact that the case was settled quickly. DOT observes that the case was settled within nine months of the filing of the complaint and before the exchange of appraisals or the holding of a condemnation commission

hearing. DOT contends that the parties merely exchanged a small number of "stock" discovery requests and that there were no court hearings. DOT also maintains that the Slacks' claim included attorney and paralegal hours which were duplicative of tasks performed by expert witnesses and also included paralegal time that duplicated attorney tasks. DOT refers us to the testimony of its two expert witnesses, attorneys Dan Sullivan and Gary Christiansen, to demonstrate that McGarvey's fee claim was excessive.

¶14 Mr. Sullivan worked as a lawyer for the Montana Highway Department from 1960 to 1982 and worked in private practice thereafter. Mr. Sullivan testified that he tried 120 condemnation cases to jury. In seven of those cases he represented private landowners. He represented two private landowners against DOT. One of the two cases in which Mr. Sullivan represented a private client against a DOT condemnation action went to a condemnation commission hearing. He was under the impression that eighty attorney hours were billed in that case to the end of the condemnation commission hearing. The other case settled before a hearing.

¶15 While working for the Highway Department, Mr. Sullivan undertook a survey of six or seven lawyers whom he believed were competent, experienced, and had represented private landowners in condemnation actions. Mr. Sullivan testified that according to his survey, a competent practitioner should be able to complete a settlement prior to a condemnation commission hearing in about forty to fifty attorney hours. Based on his experience and the study he performed, Mr. Sullivan believed that a reasonable amount of attorney time in the Slack case would have been about 48 hours.

¶16 Mr. Sullivan's testimony is not sufficient to establish that the District Court's determination of reasonable and necessary attorney hours is clearly erroneous. Mr. Sullivan's conclusion that McGarvey's fee claim was excessive was based on his personal experience and an informal survey he conducted. With regard to his experience, Mr. Sullivan did not have a large amount of experience representing private landowners in condemnation cases against DOT. Rather, he acquired the vast majority of his condemnation experience as an attorney for the State. He had only represented two private landowners in condemnation actions against DOT. With regard to his study, Mr. Sullivan simply conducted an informal survey in the mid-1970's which consisted of calling some attorneys he knew and asking them for ballpark estimates of attorney hours.

¶17 DOT also directs our attention to the testimony of Gary Christiansen, an attorney who has practiced in the Kalispell area for over thirty years. Mr. Christiansen testified that he

had handled four condemnation cases during his practice. Mr. Christiansen reviewed McGarvey's Amended Memorandum of Litigation Expenses and some of the briefing in this case as well as memoranda of litigation expenses in a number of other condemnation cases handled by McGarvey. In Mr. Christiansen's opinion, McGarvey charged an excessive number of hours, charged some hours that were duplicative, and the format of McGarvey's memorandum made it difficult to review because the memorandum contained insufficient detail to allow a comparison of the time spent with the corresponding task accomplished.

¶18 In support of Mr. Christiansen's conclusions, DOT observes that Mr. Christiansen handled a condemnation case for another private property owner on the same highway project which lasted about the same length of time as the Slacks' case and involved some similar issues - referred to as the "Jump case." In the Jump case, Mr. Christiansen charged approximately $2,800 in attorney fees. DOT appears to be implying that the Jump case is somehow analogous to the instant case and therefore is evidence that McGarvey's fee claim was excessive. However, we note that Mr. Christiansen also testified that the Jump case was handled through a "stipulated appraiser approach" in which he and the State agreed on an appraiser and agreed that the condemnation award would be set by the appraisal. Undoubtedly, the stipulated appraiser approach is a simple way to quickly dispose of a condemnation controversy and thus requires less attorney time. The instant case is not analogous; it was not settled through the stipulated appraiser approach.

¶19 DOT notes that Mr. Christiansen testified that there were inconsistencies between the times claimed by McGarvey and his paralegal and the time claimed by expert participants to the same meetings. For instance, DOT observes that McGarvey and his paralegal both charged 6.3 hours for a helicopter flight when the helicopter bill was for 1.1 hours. However, the court's determination that these hours were reasonable and necessary is not clearly erroneous. McGarvey testified that the helicopter flight was necessary to create a video for trial which showed that the Slacks had access to a shop building prior to the highway construction project and would not have access after the project. McGarvey contended that he and his paralegal spent more time than the helicopter service because they had to mark the Slacks' property and access lines before and after DOT's condemnation for purposes of the video.

¶20 DOT notes that Mr. Christiansen testified that McGarvey and his paralegal "double-billed" when the paralegal accompanied McGarvey to meetings or when both charged for the same task. Once again, we do not believe that the District Court's determination that

these hours were reasonable and necessary is clearly erroneous. McGarvey testified that it was imperative to resolve this case before the highway construction season started in order for the Slacks to be able to continue operating their logging and trucking business out of their shop building. McGarvey testified that in order to resolve this case quickly, he needed to have a series of joint meetings with various combinations of experts to show that the Slacks could lawfully access their shop before the condemnation and to establish how they would gain access to their shop after the condemnation. McGarvey testified that his paralegal attended these meetings in order to coordinate the experts' activities by establishing task lists and time lines.

¶21 We have previously stated:

> In the final analysis, the duty of fixing attorney fees in condemnation cases for the prevailing party falls upon the District Court. The purpose of the evidentiary hearing on attorney fees, required since *Crncevich v. Georgetown Recreation Corporation* (1975), 168 Mont. 113, [120], 541 P.2d 56, 59, is to aid the court in its determination in exercising its discretion to fix reasonable attorney fees. The court, as a jury, is not bound absolutely to the testimony of expert witnesses. It can reduce or increase the figures submitted to it by experts as reasonable attorney fees and as long as its findings are not clearly erroneous, the determination made in its discretion will not be disturbed.

*State v. Helehan* (1980), 189 Mont. 339, 346-47, 615 P.2d 925, 930. *We conclude that the District Court's finding that the number of attorney and paralegal hours claimed by the Slacks were reasonable and necessary is not clearly erroneous.*

### B. RATE

¶22 The District Court awarded attorney and paralegal fees at 1996 rates: McGarvey and Heberling's hourly rates were set at $125 per hour and McGarvey's paralegal rate was set at $50 per hour. DOT contends that the District Court was without authority to award fees using 1996 rates. DOT argues that fees must be awarded at the hourly rate in effect at the time the services were provided. The Slacks argue that the District Court had the authority to award fees at current rates rather than incurred rates to compensate for delay and inflation. The Slacks also contend that enhancement for delay has been authorized by the majority of federal circuits.

¶23 Whether an award of necessary litigation expenses pursuant to § 70-30-306, MCA, can be enhanced for delay by using current rather than historic hourly attorney rates is a matter of first impression. The statute defining the necessary expenses of litigation is silent with regard to whether a court may adjust the necessary expenses of litigation by awarding attorney fees at current rates to account for delay in payment. Section 70-30-306(2), MCA, simply provides that "[r]easonable and necessary attorney fees are the customary hourly rates for an attorney's services in the county in which trial is held." There are no judicial decisions allowing or precluding enhancement for delay.

¶24 We see no reason why an enhancement for delay may not be part of a "[r]easonable and necessary" attorney fee award pursuant to § 70-30-306(2), MCA. We note that 42 U.S. C. § 1988, the federal provision which allows a court to grant a "reasonable attorney's fee" to prevailing parties in federal civil rights actions, is also silent with regard to enhancement of fees for delay. However, the United States Supreme Court has held that an appropriate enhancement for delay, "whether by the application of current rather than historic rates or otherwise," is within the contemplation of § 1988. *Missouri v. Jenkins* (1989), 491 U.S. 274, 283-84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229. As the Supreme Court observed:

> Our cases have repeatedly stressed that attorney's fees awarded under this statute are to be based on the market rates for the services rendered. . . . Clearly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.

*Jenkins, 491 U.S. at 283, 109 S.Ct. at 2469 (citations omitted).*

¶25 Fees awarded pursuant to § 70-30-306, MCA, are also based on market rates. *See* § 70-30-306(2), MCA (providing that fees are to be based on "customary hourly rates"). Compensation awarded at historic hourly rates years after the services are provided is not equivalent to the same amount received reasonably promptly as the services are performed. Accordingly, we conclude that a district court may award an appropriate enhancement for delay as part of an award of reasonable and necessary attorney fees.

### C. CONTINGENCY FEE

¶26DOT argues that contingent fee agreements violate § 70-30-306(2), MCA. The Slacks

respond that the statute only precludes the computing of an attorney fee award on the basis of a contingent fee agreement and does not preclude private landowners from entering into contingent fee agreements in condemnation cases.

¶27 With regard to contingent fee agreements, § 70-30-306(2), MCA, provides that "[r]easonable and necessary attorney fees shall be computed on an hourly basis and may not be computed on the basis of any contingent fee contract entered into after July 1, 1977." The statute plainly and unambiguously precludes the *computation* of an award of reasonable and necessary attorney fees on the basis of a contingent fee contract. The statute does not preclude condemnees from entering into contingent fee agreements with their attorneys. The District Court did not compute the Slacks' attorney fees on the basis of a contingent fee contract. Rather, the court computed the Slacks' reasonable and necessary attorney fees on an hourly basis. We conclude that the District Court applied the statute correctly.

## ISSUE TWO

¶28 Did the District Court err by awarding the Slacks the attorney fees they incurred during the fee litigation?

¶29 The District Court determined that DOT did not "thoroughly investigate, nor did it objectively evaluate, [the Slacks'] claim for litigation expenses . . . [and], instead, without such investigation or objective evaluation, made an arbitrary offer of $20,200." The court held that DOT had pursued litigation over the appropriate amount of necessary litigation expenses in bad faith and, pursuant to § 25-10-711, MCA, the Slacks were entitled to attorney fees and costs incurred in the litigation over fees.

¶30 DOT argues that an award of fees is precluded as a matter of law. DOT contends that there cannot be a finding of bad faith when it had a legal duty to defend the action. In this regard, DOT notes that an award of attorney fees must be based on an evidentiary hearing allowing for oral testimony and the opportunity to cross-examine. The Slacks respond that any defense to a fee claim which the DOT has a duty to provide must be consistent with the requirements of Montana's statutes and constitution.

¶31 We have previously stated that in some circumstances the State may be required to bear a condemnee's necessary litigation expenses incurred in proving the amount of costs and fees of the underlying condemnation action. In *State v. McGuckin* (1990), 242 Mont.

81, 788 P.2d 926, we concluded that a district court could award the "costs and attorney fees incurred in proving necessary and reasonable litigation expenses *other than attorney fees.*" *McGuckin*, 242 Mont. at 87, 788 P.2d at 930 (emphasis in original). With regard to awarding attorney fees incurred in proving attorney fees, we stated:

> [A]n award of attorney fees incurred in proving the amount of attorney fees incurred in the litigation is generally not a necessary and reasonable expense of the landowner. . . . However, in order to achieve an equitable result in extraordinary circumstances, the District Court in its sound discretion may require the opposing party to bear this expense. This would be the rare exception and not the rule.

*McGuckin, 242 Mont. at 86-87, 788 P.2d at 930. DOT has not provided us with any reason to depart from McGuckin. Thus, we hold that the District Court had the authority to award the Slacks their attorney fees incurred in proving fees.*

¶32 The question thus becomes whether the instant case presented the "rare exception" in which "extraordinary circumstances" justified an award of attorney fees incurred in proving the amount of attorney fees incurred in the underlying litigation. *See McGuckin*, 242 Mont. at 87, 788 P.2d at 930. In this regard, DOT maintains that it conducted a reasonable investigation of McGarvey's claim for fees and expenses and did not simply object to each and every expense item claimed. DOT notes that two of its witnesses reviewed McGarvey's claim for fees incurred in the underlying litigation and testified that his claim was excessive, inaccurate, and duplicative. The Slacks argue that we should only preclude an award of attorney fees for proving the amount of attorney fees incurred in the underlying litigation in those cases where a district court finds that the amount of fees claimed in the underlying litigation is inflated and unreasonable. The Slacks note that the District Court awarded them all of the necessary litigation expenses they had claimed in the underlying action.

¶33 The Slacks are not entitled to attorney fees incurred in proving attorney fees simply because the District Court awarded them their entire claim for fees in the underlying litigation. This is certainly not one of the "extraordinary circumstances" we were referring to in *McGuckin*. Rather, we were referring to those circumstances in which the State's objection to the condemnee's fee claim is unreasonable. *See McGuckin*, 242 Mont. at 85, 788 P.2d at 929 (observing that allowing fees for proving attorney fees in extraordinary circumstances prevents the State from simply objecting to every expense claimed even if all expenses claimed were reasonable). We believe that the District Court abused its discretion in awarding the Slacks their attorney fees incurred in proving attorney fees.

DOT's objection to the Slacks' claim for fees was not unreasonable. As DOT notes, an award of attorney fees must be based on a hearing allowing for oral testimony, the introduction of exhibits, and the opportunity for a responsible party to cross-examine the reasonableness of the attorney fees claimed. *See Helehan*, 189 Mont. at 346, 615 P.2d at 929. At that hearing, DOT presented two qualified expert witnesses who both testified that McGarvey's fee statement was excessive and duplicative. Although the District Court did not find that DOT's evidence compelled a reduction in fees, we would be hard-pressed to characterize DOT's objections as unreasonable. Accordingly, we reverse the District Court's award of attorney fees incurred in proving the amount of fees.

## ISSUE THREE

¶34 Are the Slacks entitled to fees for post-trial work and on appeal?

¶35 The Slacks request that we remand this case to the District Court for the purpose of awarding them their fees incurred in post-trial work and in responding to DOT's appeal. We decline to do so. Although the District Court's findings justifying its award of necessary litigation expenses were not clearly erroneous, the court's fee award was clearly generous. The District Court granted McGarvey everything he requested despite the fact that DOT presented two witnesses who testified that McGarvey's claims were excessive and duplicative. The Slacks' claim for attorney fees incurred in post-trial work and on appeal is hereby denied.

¶36 Affirmed in part and reversed in part.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

Justice W. William Leaphart concurring in part and dissenting in part.

¶37 I concur in the resolution of issues two and three. I dissent as to the resolution of issue one: Were the hours expended by the Slacks' attorney and paralegal reasonable?

¶38 The DOT presented expert testimony from two witnesses, Mr. Dan Sullivan and Mr. Gary Christiansen. Both Sullivan and Christiansen are very experienced attorneys. Very few attorneys in the state have more experience in condemnation law than Mr. Sullivan. Mr. Sullivan has represented both the State and private landowners and has tried 120 condemnation cases to juries. After reviewing the history of this case, which was settled within nine months of the filing of the complaint and before exchange of appraisals or the holding of a condemnation commission hearing, he concluded that a reasonable amount of attorney time would have been approximately 48 hours.

¶39 Mr. Christiansen, an attorney of some 30 years experience, testified that he had tried four condemnation cases and had handled a condemnation case for another private property owner (the "Jump" case) on the same highway project. The "Jump" case involved some of the same issues as the Slack case and was resolved in roughly the same amount of time. The attorney fees were approximately $2,800. The majority points out that the Jump case, contrary to the Slack case, was resolved on the basis of the stipulated appraisal approach. It should be noted, however, that although the Slacks were not proceeding on the basis of stipulated appraisals, their claim was resolved before the exchange of any appraisals.

¶40 Christiansen testified that the Slacks' counsel charged for excessive hours, charged duplicative hours and that he and the paralegal both charged 6.3 hours for a helicopter flight when the helicopter bill was for 1.1 hours. Christiansen also testified that the Slacks' counsel and his paralegal both charged for the same task when the paralegal accompanied Mr. McGarvey to meetings. Mr. McGarvey testified that he had his paralegal accompany him to these meetings to coordinate the experts' activities.

¶41 The DOT also points out that the paralegal billed for 38 hours of "reviewing the file," spent 11.5 hours preparing for a meeting with an appraiser and charged over 20 hours for preparing drawings which duplicated work done by the Slacks' engineers.

¶42 The Slacks were entitled to "necessary expenses of litigation" as defined by § 70-30-306, MCA. Section 70-30-306, MCA, provides that necessary expenses of litigation mean "reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs."

¶43 Although the District Court, in fixing attorney fees in condemnation cases "is not bound absolutely to the testimony of expert witnesses," *State v. Helehan* (1980), 189

Mont. 339, 347, 615 P.2d 925, 930, the District Court here was presented with two exceptionally well-qualified expert witnesses, one of whom, Mr. Christiansen, resolved a condemnation claim on the same highway project for 1/10 the fees awarded to the Slacks' counsel. Both experts concluded that the hours were excessive and their opinions were not rebutted by any independent expert.

¶44 The District Court's conclusion that the hours were reasonable and necessary was not supported by substantial evidence. I am left with a definite and firm conviction that the trial court made a mistake. *Yellowstone II Dev. Group v. First Amer. Title Co.*, 2001 MT 41, ¶ 34, 304 Mont. 223, ¶ 34, 20 P.3d 755, ¶ 34. In my view, the award of $29,483 in attorney fees in a case which was resolved without a hearing and within nine months of filing the complaint and which involved a paralegal billing a significant number of hours for work which was duplicative of work performed by attorneys, engineers and appraisers was clearly erroneous.

¶45 For the above reasons, I dissent.

### /S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins in the concurring and dissenting opinion of Justice Leaphart.

### /S/ JAMES C. NELSON

Justice Terry N. Trieweiler concurring in part and dissenting in part.

¶46 I concur with the majority's conclusion that the District Court did not err when it found the number of hours claimed by Slacks' attorneys reasonable and enhanced fees for delay by awarding them at the attorney's 1996 rates. While Justice Leaphart's opinion to the contrary capably sets forth the evidence relied on by the appellants, it ignores the evidence submitted by Slacks which is the evidence on which the District Court justifiably based its decision.

¶47 Furthermore, I concur with the majority's conclusion that § 70-30-306(2), MCA, does not prohibit condemnees from entering into contingent fee agreements with their attorneys.

¶48 However, I dissent from that part of the majority opinion which, in reliance on *State v. McGuckin* (1990), 242 Mont. 81, 788 P.2d 926, reverses the District Court's award of fees incurred to prove Slacks' "necessary expenses of litigation." I conclude first that

*McGuckin* does not require reversal of the District Court's award and second that, to the extent arguably applicable, *McGuckin* was incorrectly decided because it is logically inconsistent and based on the false premise that an attorney's efforts to prove the reasonable value of "necessary expenses of litigation" are for his or her own benefit.

¶49 What is important to note from *McGuckin* is its recognition that:

> The State's power of eminent domain is controlled by Article II, Section 29 of the Montana Constitution which provides:
>
> "Section 29. Eminent Domain. Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner. In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails."
>
> The policy underlying the constitutional provision is to make the land owner whole after the State takes his property. This constitutional mandate is further embodied in the condemnation statutes:
>
> "(1) *The condemnor shall,* within 30 days after an appeal is perfected from the commissioner's award or report or not more than 60 days after waiver of appointment of condemnation commissioners, *submit to condemnee a written final offer of judgment for the property to be condemned, together with the necessary expenses of condemnee then accrued* . . . .
>
> "(2) In the event of litigation and when the private property owner prevails by receiving an award in excess of the final offer of the condemnor, the court shall award the necessary expenses of litigation to the condemnee."
>
> Section 70-30-305, MCA. (Emphasis added.) Necessary expenses of litigation are defined as:
>
> " . . . reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs . . . ."

242 Mont. at 84 and 85.

¶50 In *McGuckin,* the State Department of Highways contended that pursuant to § 70-30-305(1), MCA, the statutory authority for an award of attorney fees to a prevailing condemnee, a landowner is entitled to only those expenses of litigation accrued before a settlement is reached. However, the Court correctly disagreed and gave the following explanation:

> For us to strictly construe the terms of the settlement agreement as unequivocally precluding an award of any expenses incurred after the date of settlement could result in denying a landowner just compensation in direct contravention of Article I, Section 29 of the Constitution.
>
> . . .
>
> If they are precluded from recovering any additional expenses after the date the initial settlement was reached, there is nothing to deter the State from making such an unreasonable objection in all cases and hope the Court might agree with them. The end result could deny the landowner a net recovery. On the other hand, the landowner and counsel should not be allowed to benefit from making unreasonable and inflated expense claims that force the State to object and lead to further litigation upon which a landowner's counsel can claim further fees . . . .

242 Mont. at 85.

¶51 With that much of the *McGuckin* opinion, I agree. The Constitution requires that condemnees be made whole when their property is taken. They cannot be made whole unless they are awarded reasonable costs of litigation when litigation is necessary in order to recover reasonable compensation for their land. Furthermore, they cannot be made whole, unless they are awarded additional fees and costs, when additional litigation is necessary in order to recover the initial costs of litigation. That fact is no more true because the State acts unreasonably than when the State refuses to pay reasonable expenses of litigation on some arguably reasonable basis. In either event the attorney's efforts are necessary to recover the expenses of litigation and unless the claimant is compensated for those efforts, his or her net recovery is reduced. Therefore, I strongly disagree with this Court's conclusion in *McGuckin* ". . . that an award of attorney fees incurred in proving the amount of attorney fees incurred in the litigation is generally not a necessary and reasonable expense of the landowner." 242 Mont. at 86. That conclusion is totally inconsistent with the majority's conclusion in the same case that ". . . in order to

achieve an equitable result in extraordinary circumstances, the District Court in its sound discretion may require the opposing party to bear this expense . . . ." 242 Mont. at 87. There was no equitable authority cited in *McGuckin* for an award of attorney fees. The only authority for attorney fees discussed in *McGuckin* was Article II, Section 29 of the Montana Constitution and § 70-30-305, MCA. Both require an award of attorney fees to make the condemnee whole. Neither conditions the award of attorney fees on the nature of the condemnor's conduct.

¶52 Another example of the majority's logical inconsistency in *McGuckin* is its conclusion that:

> However, we conclude that costs and attorney fees incurred in proving necessary and reasonable litigation expenses *other than attorney fees* are chargeable to the client and to the other party, taking into consideration the other party's litigation expenses in defending other costs and attorney fees disallowed or unnecessary and unreasonable.

242 Mont. at 87.

¶53 Section 70-30-306, MCA, which defines "necessary expenses of litigation" includes both attorney fees and costs. It makes no distinction between them for purposes of the condemnee's right to recovery. Nor was there any reason for this court to distinguish between the circumstances under which costs could be recovered as opposed to attorney fees. An award of both is necessary to ensure that the condemnee is made whole and when both are necessarily incurred to prove a property owner's "necessary expenses of litigation" both should be awarded. The constitution requires no less.

¶54 The only explanation I can find in the *McGuckin* opinion for this logically inconsistent result is the mistaken premise that the efforts of an attorney to prove the value of attorney fees incurred by his client are solely for the attorney's benefit. That opinion states as follows:

> With respect to attorney fees incurred in proving attorney fees, it is apparent that a landowner's counsel is acting primarily in his own interest rather than for the benefit of his client. The landowner's condemnation award already secured, the outcome of the litigation expense hearing becomes important to the attorney as well as the client, and with respect to attorney fees awarded, any result secured by the services

of the attorney would be for his benefit rather than the client. *See, e.g., Glenview Park District v. Redemptorists Fathers of Glenview* (1980), 89 Ill.App.3d 623, 45, Ill.Dec. 29, 412 N.E.2d. 162.

242 Mont. at 86.

¶55 Nothing could be more incorrect than the preceding statement and the facts in this case are a perfect example. Slacks were obligated to pay their attorney a contingent fee equal to 40% of the amount recovered above DOT's original offer. The majority agrees that contingent fees are a matter between the attorney and client and are not precluded by § 70-30-306(2), MCA.

¶56 In this case the DOT originally offered $45,150. However, due to the efforts of Slacks' attorney, ultimately agreed to pay $168,069. The fee that Slacks owed their attorney for recovery of that amount was at least $49,167. 60. That fee was owed regardless of how much Slacks' attorney was able to recover from the State for his "necessary expenses of litigation." In other words, when Slacks claimed $41,657 as reasonable expenses and the State offered $26,000, Slacks' attorney had little personal incentive to litigate the additional amount recovered. The primary benefit was Slacks' because most of the additional amount by which they were compensated for expenses, including attorney fees, increased their net recovery and brought them closer to being made "whole." This Court's conclusion in *McGuckin* that an attorney's efforts to see that his client receives the full amount of his necessary expenses of litigation are for the attorney's benefit rather than the client's benefit is completely wrong.

¶57 For all these reasons, I would reverse *McGuckin* and hold that because of the constitutional obligation that property owners whose land has been condemned be made whole, property owners are also entitled to an award of those attorney fees incurred to prove "necessary expenses of litigation" unless those expenses have been claimed unreasonably. For the same reasons, I dissent from the majority's denial of those fees and costs incurred in post-trial proceedings and on appeal.

¶58 However, having so concluded, I also disagree that the claim in this case is barred by *McGuckin*. The court in *McGuckin* seemed to be concerned with two extreme situations. The first, where the State unreasonably objects to every expense item claimed and the second, where the landowner and counsel make inflated expense claims that force the State to object. The opinion infers that in the *McGuckin* case, the landowner's claims were

unreasonable and the State's objections were reasonable. Here, the landowners' claimed expenses were not unreasonable. The full amount was awarded by the District Court and that award has been affirmed by this Court. Therefore, the second extreme with which this Court was concerned in *McGuckin* is not present in this case and there is no justification for applying *McGuckin* to bar the landowners' claim for those costs and fees incurred to prove his necessary expenses of litigation.

¶59 For these reasons, I concur in part and dissent in part from the majority opinion.


/S/ TERRY N. TRIEWEILER