No. 05-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 67

MARK CHASE, DAVE BURTON
and BARBARA HERMAN,

      Plaintiffs and Appellants,

  v.

BEARPAW RANCH ASSOCIATION, GENE
AUBREY, RON FRAZE, DAVID GRIMLAND,
JAMES DICKEY and MIKE PREYER,

      Defendants and Respondents.

APPEAL FROM:    The District Court of the Twenty-Second Judicial District,
In and For the County Stillwater, Cause No. DV 2001-34,
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Robert L. Sterup, Holland & Hart, Billings, Montana

      For Respondents:

          Leonard H. Smith and Christopher C. Voigt, Crowley, Haughey,
Hanson, Toole & Dietrich, PLLP, Billings, Montana

Submitted on Briefs:  December 14, 2005

Decided:  April 11, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Mark Chase, Dave Burton and Barbara Herman (collectively, "Chase") filed an action against a homeowner's association and its board of directors—Bearpaw Ranch Association, Gene Aubrey, Ron Fraze, David Grimland, James Dickey and Mike Preyer (collectively, "Bearpaw")—seeking a declaratory judgment that the governance of the association violates Montana law and requesting injunctive relief.  The District Court granted summary judgment in favor of Bearpaw.  Bearpaw then moved the court to award attorney fees.  The District Court awarded Bearpaw $79,107.50 in attorney fees.  Chase now appeals.

¶2    We reframe the issues on appeal as follows:

¶3    (1) whether the District Court erred in awarding attorney fees to Bearpaw; and

¶4    (2) whether the District Court abused its discretion in calculating the amount of attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    This dispute has endured in the courts of Montana for nearly half a decade and has reached this Court once before.  Thankfully, we need not rehash its entire sordid past to resolve the issues on appeal.  Instead, we begin *in medias res*, when the District Court granted summary judgment in favor of Bearpaw, by order dated September 4, 2003.  The District Court did not file this order, however, until October 16, 2003.  Meanwhile, on October 2, 2003, Chase filed a notice of appeal.  Neither Chase nor Bearpaw filed a notice of entry of judgment on the court's grant of summary judgment.

2

¶6 After both parties had filed appellate briefs in this Court, Chase eventually moved this Court to dismiss its appeal. We dismissed the case and remanded for a determination of costs, pursuant to Rule 36, M.R.App.P.

¶7 On June 23, 2004, Bearpaw filed a motion requesting that the District Court award attorney fees. On August 13, 2004, the District Court signed an order granting Bearpaw's request for attorney fees and scheduling a subsequent hearing to determine the proper amount of attorney fees. This ruling was filed on August 23, 2004.

¶8 The District Court initially provided three potential bases for its decision to award attorney fees: a contractual fee-shifting provision, rendered reciprocal by § 28-3-704, MCA; the Declaratory Judgment Act, § 27-8-313, MCA; and the equitable *Foy* exception to the American Rule, *see, e.g.*, *National Cas. Co. v. American Bankers*, 2001 MT 28, ¶ 28, 304 Mont. 163, ¶ 28, 19 P.3d 223, ¶ 28. The District Court failed, however, to specify which of the three rationales it relied upon in ruling that Bearpaw is entitled to recover attorney fees.

¶9 The District Court granted Chase's motion to vacate the scheduled hearing on the proper amount of attorney fees so that the court could also address the question of whether it lacked jurisdiction to award attorney fees. Chase argued that, pursuant to Rule 59(g), M.R.Civ.P., the District Court's failure to hold a hearing and award attorney fees within sixty days of Bearpaw's initial request for attorney fees divested the court of jurisdiction to make such an award.

3

¶10     Chase's counsel failed to show up for the beginning of the consolidated hearing on the issues of whether the District Court retained the authority to award attorney fees and determination of the appropriate amount of attorney fees.  At the hearing, Bearpaw presented the testimony of its counsel, Leonard Smith, who indicated that Bearpaw would be billed $8,352 for legal services rendered in August and September of 2004.  Bearpaw also presented an expert witness, Robert E. Lee (Lee), who commented on the "work-enhancing characteristics" of the case—including the need to communicate with multiple individual defendants, the "onerous" burden to review voluminous documents, and the contentious zeal that characterized Chase's prosecution of the case ("a scorched earth approach on the part of the plaintiffs and their counsel").  Lee testified that each of the seven factors considered in determining the reasonableness of attorney fees, *see Forrester & MacGinnis v. B. & M. Co.* (1914), 29 Mont. 397, 409, 74 P. 1088, 1093, and *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, ¶ 36, 64 P.3d 984, ¶ 36, supported the reasonableness of an award of $71,171.50 in attorney fees (for expenses incurred through July 26, 2004).  Lee also speculated that "whatever fees have been accrued since [July 26] dealing with the motions that I have seen on file and the issues that I have heard discussed in my presence in court today, even that additional amount, which I haven't personally reviewed, would be justified in this case."  Chase's counsel arrived during Lee's testimony and informed the court that he had not received notice of the hearing until he received a telephone call from the clerk of court when the hearing began.  After the District Court denied Chase's counsel's first request for a continuance so that he

4

could prepare for the hearing, counsel cross-examined Lee. Avowedly lacking notice of the hearing, however, counsel was not prepared to offer testimony from Chase's own witnesses. Consequently, Chase's counsel requested that the hearing be continued until such time as those witnesses would be available to testify.

¶11 Several weeks later, the court held a second hearing at which time Chase offered the expert testimony of Bruce Fain (Fain). Fain testified that in his opinion, charges totaling $10,763 for client conferences are excessive for a case that is resolved on summary judgment. He also testified that, in comparison to similar cases he has litigated, $12,122 is an unreasonable charge for briefing and preparing a motion for summary judgment. Fain opined that Chase's opposition to Bearpaw's fee claim is reasonable, and therefore Bearpaw should not recover fees incurred in attempting to recover attorney fees, nor should Bearpaw recover appellate fees, since the Supreme Court declined to award them when afforded the opportunity. Finally, although he acknowledged that Bearpaw's counsel needed to review roughly 8,000 documents, Fain suggested that the seven factors utilized in assessing a claim for attorney fees would support an award of only $15,200, which roughly coincides with the fees incurred by Chase before the court granted summary judgment.

¶12 Chase also sought to present the testimony of the three named plaintiffs. The District Court, however, sustained Bearpaw's objection to their testimony. Chase made an offer of proof which indicated that the plaintiffs anticipated that the litigation would be quickly resolved, that they made eleven separate offers to settle or submit to arbitration,

5

and that they would suffer hardship if saddled with nearly $80,000 in fees. The court denied the offers, reasoning that the three lay witnesses lacked competence to testify as to the propriety of attorney fees claimed by Bearpaw and that their testimony would not prove relevant to that issue.

¶13 The District Court subsequently ordered Chase to reimburse Bearpaw $79,107.50 (plus interest) for the attorney fees incurred in defending the suit and seeking attorney fees. The court specified that Bearpaw is entitled to recover attorney fees incurred in defending the action in the District Court pursuant to a contractual fee-shifting provision, rendered reciprocal by § 28-3-704, MCA. The court determined that Bearpaw is entitled to recover attorney fees incurred in preparing its appeal of the summary judgment ruling pursuant to the *Foy* equitable exception to the American Rule. Finally, the court held that Bearpaw is entitled to recover attorney fees incurred in seeking attorney fees ("fees-for-fees") pursuant to *State ex rel. DOT v. Slack*, 2001 MT 137, 305 Mont. 488, 29 P.3d 503, because Chase unreasonably opposed Bearpaw's fee claims. Chase then filed this appeal.

## STANDARDS OF REVIEW

¶14 "We review a district court's conclusions of law to determine whether the district court's interpretation of the law is correct." *Chamberlin v. Puckett Construction* (1996), 277 Mont. 198, 202-03, 921 P.2d 1237, 1240. "The construction and interpretation of a contract is a question of law for the court to decide." *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 24, 327 Mont. 99, ¶ 24, 113 P.3d 275, ¶ 24 (citation and quotations omitted). Whether or not a party is entitled to recover attorney fees is "strictly a question

6

of law." Thus, "[w]e review a district court's conclusions of law pertaining to the recovery of attorney's fees to determine whether those conclusions are correct." *Transaction Network v. Wellington Tech.*, 2000 MT 223, ¶ 17, 301 Mont. 212, ¶ 17, 7 P.3d 409, ¶ 17 (citation omitted).

¶15 We review a district court's award of reasonable attorney fees for an abuse of discretion. *Chamberlin*, 277 Mont. at 206, 921 P.2d at 1242. "A court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *McDermott v. Carie*, 2005 MT 293, ¶ 10, 329 Mont. 295, ¶ 10, 124 P.3d 168, ¶ 10 (quotations and citations omitted, alteration in original).

## DISCUSSION

### *Issue 1: Whether the District Court erred in awarding attorney fees to Bearpaw.*

¶16 Chase argues that the District Court erred in awarding attorney fees to Bearpaw because, pursuant to Rule 59, M.R.Civ.P., the District Court lost authority to award attorney fees when it failed to hold a hearing to determine the appropriate amount of attorney fees within sixty days of Bearpaw's motion requesting attorney fees. Chase notes that Rule 59(g), M.R.Civ.P., requires a court to rule on a motion to alter or amend a judgment within sixty days or else that motion is deemed denied. Further, Chase maintains that a petition for attorney fees cannot be adjudicated absent an evidentiary hearing; therefore, Chase suggests, a court cannot legally rule on a post-judgment motion for attorney fees without first holding an evidentiary hearing to determine the proper

7

amount of fees. Accordingly, Chase concludes that the court's failure to hold an evidentiary hearing within sixty days of Bearpaw's motion divested the court of jurisdiction to amend its judgment by awarding fees to Bearpaw.

¶17 Bearpaw argues that the District Court retained the authority to award attorney fees because the court never entered judgment when it awarded summary judgment in favor of Chase, and therefore, the request for attorney fees was not a post-judgment motion to amend the judgment. Alternatively, Bearpaw maintains that Rule 59, M.R.Civ.P., requires only that the District Court rule within sixty days whether it will award attorney fees, but allows the court to later hold a hearing to determine the proper amount of fees to award. We agree with Bearpaw's interpretation of Rule 59.

**A. The District Court's Authority to Award Fees:**

¶18 "A motion for attorneys' fees filed after entry of a judgment is treated as a motion to alter or amend a judgment." *Associated Press v. Croft*, 2004 MT 120, ¶ 36, 321 Mont. 193, ¶ 36, 89 P.3d 971, ¶ 36. Thus, to determine whether Rule 59 applies, we must first ascertain whether the District Court entered summary judgment before Bearpaw requested attorney fees.

¶19 Although Bearpaw contends that judgment was not entered on the court's grant of summary judgment until December 21, 2004, this argument lacks merit. The District Court granted summary judgment in favor of Bearpaw on September 4, 2003. Chase then filed a notice of appeal on October 2, 2003, two weeks before the clerk of court filed the order granting summary judgment. By filing the judgment, the clerk effectively entered

8

judgment against Chase. *See Firefighters, Local No. 8 v. District Court*, 2002 MT 17, ¶ 16, 308 Mont. 183, ¶ 16, 40 P.3d 396, ¶ 16 (acknowledging that the actual filing of a judgment in the clerk of court's office constitutes entry of the judgment).

¶20 Given that Rule 59 applies, we must consider whether the court was divested of its authority to award attorney fees when it failed to hold an evidentiary hearing and award a specific figure within sixty days of Bearpaw's motion requesting fees. By its terms, Rule 59 mandates the court to "determine" a motion to alter or amend a judgment within sixty days, "and if the court shall fail to *rule* on the motion within the 60 day period, the motion shall be deemed denied." Rule 59(g), M.R.Civ.P. (emphasis added). The Rule does not require a district court to hold all required hearings within sixty days of the motion, nor does it require that the court determine specifically *how* to amend the judgment within sixty days. It simply requires the court to rule, within sixty days, whether it will amend the judgment.

¶21 Chase argues that *Croft* requires a district court to hold a hearing and award a specific figure within sixty days. Chase misreads *Croft*. In *Croft*, the court held an evidentiary hearing within sixty days of the motion requesting attorney fees. ¶ 34. The court, however, did not rule that it would award fees within sixty days of the motion requesting fees. ¶ 37. We reversed the award of attorney fees because the court failed to "render a decision [within sixty days] regarding" the motion for fees. ¶ 37. *Croft* does not require a district court to hold a hearing and award a specific figure for attorney fees

9

within sixty days of a motion. It simply requires the court to render a decision whether or not to award attorney fees within sixty days of a post-judgment request for fees.

¶22 Existing precedent confirms that a distinction exists between a court's decision to award attorney fees and a court's determination of the proper measure of fees. In *Plath* we held that a district court abused its discretion when it awarded $10,000 in attorney fees without first holding an evidentiary hearing. We noted that the $10,000 figure:

> is not supported by competent evidence established as the result of an evidentiary hearing. Accordingly, *although we affirm the District Court's discretionary decision to grant attorney fees*[,] . . . we reverse the District Court's order of attorney fees in the amount of $10,000 and remand the cause for an evidentiary hearing . . . .

*Plath*, ¶ 41 (emphasis added). Likewise, in *Rossi v. Pawiroredjo*, 2004 MT 39, 320 Mont. 63, 85 P.3d 776, we reversed a district court's award of $7,166.40 absent an evidentiary hearing. Although we did not disturb the court's determination that fees should be awarded, we vacated the award and "remanded for an evidentiary hearing to determine the proper *amount* of attorney fees to be awarded." *Rossi*, ¶ 29 (emphasis added). Thus, while it is abundantly clear that an evidentiary hearing must be held before attorney fees may be awarded in any specific amount, it is equally clear that such a hearing need not be held before a court may decide to award attorney fees.

¶23 In light of the foregoing analysis, we conclude that on August 13, 2004—fifty-one days after Bearpaw filed its motion—the District Court had authority to grant Bearpaw's motion requesting attorney fees.

10

**B. Whether the District Court Properly Awarded Fees:**

¶24 Having established that the District Court retained authority to rule on Bearpaw's motion for attorney fees, we now turn to whether the District Court properly awarded fees to Bearpaw. Chase correctly observes that the District Court order of August 13, 2004, awarding attorney fees fails to specify the basis for the award. Nevertheless, in its later order on the proper amount of attorney fees, the court clarified the various bases for its award. The court indicated that § 6.02 of the Declaration of Covenants, Conditions and Restrictions, rendered reciprocal by § 28-3-704, MCA, enabled Bearpaw to recover attorney fees incurred during the initial phase of litigation in the District Court, which culminated in the court's granting summary judgment in favor of Bearpaw. The court found that Chase had pursued a frivolous appeal, entitling Bearpaw to recover fees incurred on appeal pursuant to the *Foy* exception to the American Rule as articulated in *Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 429-30, 913 P.2d 641, 650-51. Finally, the court justified awarding fees-for-fees because Chase's recalcitrance in persistently re-raising settled issues qualifies as an "extraordinary circumstance" that merits such a sanction. *See Slack*, ¶ 33 (noting that fees-for-fees are justified only in those "extraordinary circumstances" when the "State's objection to a condemnee's fee claim is unreasonable").

**1. Fees Incurred in the District Court and on Appeal:**

¶25 The Declaration of Covenants, Conditions and Restrictions ("Declaration") provides that "Bearpaw Ranch . . . shall be subject to the following easements, covenants,

11

conditions, and restrictions *and will bind the grantees, heirs, successors, and assigns of the owners and any future owners.*"  (Emphasis added.)  Section 6.02 of the Declaration provides that:

> [i]n any action of any kind for the enforcement of the Covenants, Conditions, and Restrictions, if the relief prayed for is granted in whole or in part, the applicant for relief shall be entitled to recover necessary court Costs [sic] for the action, including reasonable attorney's fees.

Chase argues that this provision does not entitle Bearpaw to recover attorney fees because Bearpaw was not the "applicant for relief."  Chase overlooks § 27-3-704, MCA, however, which renders such contractual fee-shifting provisions reciprocal:

> Whenever, by virtue of the provisions of any contract or obligation in the nature of a contract[,] . . . one party to such a contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having the right shall bring an action upon the contract or obligation, then in any action on such contract or obligation all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees and the prevailing party in such action . . . shall be entitled to recover his reasonable attorney fees from the losing party or parties.

Under the Declaration, Chase could have recovered reasonable attorney fees if he had prevailed on his claims.[1]  Due to the statutorily imposed reciprocity of fee-shifting, the Declaration entitles Bearpaw—the prevailing party against whom Chase brought a claim—to recover reasonable attorney fees.  Because the Declaration does not explicitly exclude attorney fees incurred on appeal, such fees may also be recovered pursuant to the fee-shifting provision of the contract, as they are "necessary" costs incurred in ultimately

---

[1]In his Amended Complaint, Chase specifically requested attorney fees pursuant to § 6.02 of the Declaration.  Thus, Chase has conceded that he is a party to the Declaration and is bound by its terms.

12

prevailing on the claim. *See, e.g.*, *Chamberlin*, 277 Mont. at 210, 921 P.2d at 1244 ("where an award of attorney's fees is based on a contract, the prevailing party is also entitled to an award of reasonable attorney's fees incurred on appeal"). Although the District Court did not base its award of appellate fees on the Declaration, we will not reverse a district court when it reaches the correct result, even if for the wrong reason. *Palmer v. Bahm*, 2006 MT 29, ¶ 20, 331 Mont. 105, ¶ 20, 128 P.3d 1031, ¶ 20. Accordingly, we affirm the District Court's determination that Bearpaw is entitled to recover fees incurred on appeal.

**2. Fees Incurred in Litigating the Withdrawal of Chase's Attorney:**

¶26     Chase suggests that the District Court improperly awarded Bearpaw fees that it incurred in securing the withdrawal of Chase's initial counsel (Towe) due to a conflict of interest. While securing the withdrawal of Towe may have benefited Bearpaw, we cannot say that this was a "necessary" expense incurred in "enforc[ing] the Covenants, Conditions, and Restrictions" contained in the Declaration. Rather, Bearpaw chose to litigate this wholly collateral issue, which had *nothing* to do with enforcement of the Declaration. Had Chase prevailed, he could not have recovered the costs he incurred in connection with Towe's withdrawal. Nor may Bearpaw recover the attorney fees incurred in lititgating this issue. According to Fain, Bearpaw was awarded $5,777 in fees related to the withdrawal issue.

13

**3. Fees Incurred in Recovering Fees (Fees-for-Fees):**

¶27　Finally, we turn to the question of whether the District Court properly awarded fees-for-fees to Bearpaw.  Chase argues that the District Court erroneously awarded fees-for-fees.  As a matter of law, the District Court erred in applying the "unreasonable objection" standard articulated in *Slack* and *State By Dep't of Highways v. McGuckin* (1990), 242 Mont. 81, 788 P.2d 926.  Both of these cases dealt with the issue of fees-for-fees under a statutory framework[2] that entitled the defendants to recover attorney fees in the specific context of condemnation proceedings.  Here, Bearpaw is entitled to recover attorney fees pursuant to a contractual fee-shifting provision (rendered reciprocal by statute), rather than pursuant to the constitutionally mandated statutory framework that informed our holdings in *Slack* and *McGuckin*.  Consequently, we rely on caselaw interpreting the scope of contractual fee-shifting provisions, rather than *Slack* or *McGuckin*.

¶28　In *Amazi v. Atlantic Richfield Co.* (1991), 249 Mont. 355, 816 P.2d 431, this Court considered whether a party who recovers attorney fees pursuant to a contractual provision may additionally recover fees-for-fees.  GN (a subcontractor) had indemnified ARCO "against all claims, liabilities, demands, causes of action and judgments (including costs and reasonable attorneys fees)" asserted by third parties who were injured "*in whole or in part*" as a result of GN's negligent conduct.  *Amazi*, 249 Mont. at 359, 816 P.2d at 433.

---

[2]These statutes, §§ 70-30-305 and -306, MCA, codified the constitutional right to attorney fees incurred in defending against condemnation proceedings.  *See* Art. II, Sec. 29, Mont. Const.

14

We affirmed the ruling that the indemnity provision allowed ARCO to recover attorney fees incurred in defending against claims of ARCO's negligence (which was concurrent with GN's own negligent conduct). *Amazi*, 249 Mont. at 360, 816 P.2d at 434. ARCO additionally sought to recover attorney fees incurred in establishing its right to indemnity. *Amazi*, 246 Mont. at 360, 816 P.2d at 434. In other words, ARCO sought fees-for-fees. We held that "absent an express contractual term an indemnitee may not recover attorneys' fees incurred in establishing indemnity." *Amazi*, 249 Mont. at 361, 816 P.2d at 435. We held that a contractual provision that required "the responsible party [to] . . . pay all . . . reasonable attorneys fees, and other related expenses[,]" was "not sufficiently express" to enable ARCO to recover fees incurred in establishing its right to attorney fees pursuant to the indemnification provision. *Amazi*, 249 Mont. at 361, 816 P.2d at 435.

¶29 Our holding in *Amazi* is consistent with the American Rule, which posits that a party generally pays its own attorney fees. *Finke v. State ex rel. McGrath*, 2003 MT 48, ¶ 30, 314 Mont. 314, ¶ 30, 65 P.3d 576, ¶ 30. Contractual fee-shifting provisions are a recognized exception to the American Rule. *Finke*, ¶ 30. The terms of the contract necessarily dictate the scope of the exception and fee-shifting occurs only to the extent that the contracting parties clearly intended.

¶30 The fee-shifting provision in the Declaration is strikingly similar to the fee-shifting provision at issue in *Krumme v. Westpoint Stevens Inc.* (S.D.N.Y. 1999), 79 F.Supp.2d 297. In determining whether Krumme was entitled to fees-for-fees, the *Krumme* court applied the rule—consistent with our holding in *Amazi*—that "a general

15

contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." 79 F.Supp.2d at 312 (quoting *F.H. Krear & Co. v. Nineteen Named Trustees* (2d Cir. 1987), 810 F.2d 1250, 1266); *see also National Union Fire Ins. Co. v. Hartel* (S.D.N.Y. 1992), 782 F.Supp. 22, 24-25 (requiring clear contractual language evincing the parties' intent to override the general rule in order for a party to recover fees-for-fees). The fee-shifting clause provided, "[i]f . . . there should arise any dispute as to the validity, interpretation or application of any term [or] condition of this Agreement . . . Cluett agrees . . . to provide sums sufficient to pay on a current basis . . . [Krumme's] costs and reasonable attorneys' fees . . . incurred by [Krumme] in connection with any dispute or litigation . . . ." *Krumme*, 79 F.Supp.2d at 300. Because the fee-shifting clause was itself a term of the Agreement, the court awarded Krumme "expenses incurred in litigating the terms of the attorneys' fees provision," (i.e., fees incurred in establishing Krumme's contractual entitlement to fees). *Krumme*, 79 F.Supp.2d at 313. The court, however, denied Krumme's claim for fees incurred "in connection with [proceedings to collect] reasonable attorneys' fees," (i.e., fees incurred in establishing the amount of fees that may be recovered), because the fee-shifting provision lacks specific language that would entitle Krumme to recover such fees. *Krumme*, 79 F.Supp.2d at 313. The court expressed concern that "the exception would swallow the rule," if Krumme could recover fees incurred in establishing a "'reasonable' amount of fees . . . ." *Krumme*, 79 F.Supp.2d at 313.

16

¶31    Here, the Declaration itself provides for recovery of attorney fees "in any action of any kind *for the enforcement* of the Covenants, Conditions, and Restrictions[.]" (Emphasis added.)  The fee-shifting provision is one such "Condition" of the Declaration. Litigation over the *entitlement* to fees *under the contract* is properly construed as an action for the enforcement of a condition contained in the Declaration.  Consequently, pursuant to the express terms of the contract, Bearpaw is entitled to recover attorney fees incurred in establishing its entitlement to fees under the contract.

¶32    Fees incurred in establishing the *amount* of "reasonable attorney's fees," however, are not compensable under the contract.  A dispute over the reasonableness of the fees incurred by Bearpaw is not properly construed as an action for enforcement of a "Condition" included in the Declaration.  Instead, it is a dispute over the interpretation of a generic term of the Declaration and a factual dispute over the necessity of particular fee claims.[3]  As such, the contract itself does not provide for recovery of fees incurred in establishing the *amount* of attorney fees reasonably incurred by Bearpaw.

¶33    We hold that the District Court properly awarded attorney fees to Bearpaw for most expenses incurred in proceedings preceding its grant of summary judgment to Bearpaw as well as for all costs subsequently incurred on appeal.  Additionally, the court properly awarded fees-for-fees only to the extent that such fees were incurred in establishing Bearpaw's entitlement to fees under the terms of the Declaration.  The District Court erred, however, in awarding fees-for-fees to compensate Bearpaw for

---

[3]We note that "reasonable" commonly qualifies "attorney fees" in statutory fee-shifting provisions as well as contractual fee-shifting provisions.

17

expenditures incurred to establish the reasonable amount of attorney fees. The District Court also erred in awarding fees to compensate Bearpaw for expenses incurred in procuring the withdrawal of Towe.

*Issue 2: Whether the District Court abused its discretion in determining the amount of attorney fees.*

¶34 Chase argues that the District Court awarded an excessive amount of fees to Bearpaw. Chase maintains that during each phase of litigation it expended considerably less in attorney fees than the fees that Bearpaw claimed; therefore, Bearpaw's claimed fees are unreasonable. Additionally, Chase notes that the amount recovered by Bearpaw vastly exceeds fee awards that this Court has affirmed in cases disposed of on summary judgment. Chase contends that the fee award erroneously included fees-for-fees and fees incurred in procuring the withdrawal of Towe. Chase avers that Bearpaw improperly recovered billings for general association matters and fees incurred in holding conferences with clients. Finally, Chase suggests that the District Court abused its discretion when it denied plaintiffs the opportunity to testify during the hearing on the proper measure of damages.

¶35 Bearpaw observes that both parties presented expert testimony concerning the reasonableness of its fee claims and stresses that the District Court properly exercised its broad discretion in according greater weight and credibility to the testimony of Bearpaw's expert. Bearpaw denigrates Chase's attempts to compare the fee award it received to other awards this Court has affirmed because the reasonableness of fees

18

depends on the unique facts of each case. In sum, Bearpaw contends that Chase has not established that the District Court abused its discretion in determining the amount of fees.

¶36 "[T]he reasonableness of attorney's fees must be ascertained under the unique facts of each case." *Chamberlin*, 277 Mont. at 205, 921 P.2d at 1241-42. Thus, in arguing that the District Court erred in awarding $79,107.50 in attorney fees, Chase cannot avail himself of comparisons to fee awards in other cases.

¶37 Also without merit is Chase's argument that the District Court abused its discretion when it declined to allow the three named plaintiffs to testify at the hearing on the proper measure of damages. None of the three plaintiffs is an attorney, nor did any of them profess expertise in assessing the veracity or reasonableness of attorneys' billings. The District Court properly determined that they lacked competence to testify as to the reasonableness of the fees claimed by Bearpaw. The offer of proof made by Chase's counsel confirms that these witnesses' testimony—that several other members of the association were interested in resolving the issues raised by plaintiffs, that the plaintiffs offered to submit to arbitration or mediation, and that the plaintiffs would incur great hardship if made to pay Bearpaw's fees—would not have been relevant in determining the reasonableness of Bearpaw's claimed fees. Nor would it have been relevant to the issue of whether the court retained authority to award fees in the first place. As such, the testimony was properly excluded. *See* Rule 402, M.R.Evid.

¶38 The following factors should be considered as guidelines in determining the reasonableness of attorney fees:

(1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Plath*, ¶ 36 (citing *Swenson v. Janke* (1995), 274 Mont. 354, 361, 908 P.2d 678, 682-83).

These factors are not exclusive; district courts may consider other factors as well. *Morning Star Enterprises v. R.H. Grover* (1991), 247 Mont. 105, 113, 805 P.2d 553, 558. Nevertheless, a comparison of the parties' respective expenditures is not necessarily a proper measure of reasonableness. If, due to the nature of the case, one party received significantly more legal services requiring more time and labor—for example, by conducting extensive document review—than the other side and prevailed in the end, consideration of the factors would justify awarding fees irrespective of any disparity between the parties' respective expenditures.

¶39   Bearpaw offered Lee's expert testimony during the hearing on the proper amount of attorney fees. Lee testified that certain characteristics of the case increased the amount of labor, time and trouble involved and he detailed how each of the seven factors supported the reasonableness of fees of $79,523.50. Chase offered the expert testimony of Fain, who opined that in comparison to similar cases that he has litigated, Bearpaw's claimed fees are not reasonable. Fain's report specifically identifies charges for conferences with clients and billings for general association matters as improperly submitted fees. Fain briefly touched on the seven factors and suggested that they would support awarding fees of only $15,200. Fain did, however, acknowledge that Bearpaw's

20

counsel had to review roughly 8,000 documents to ascertain their relevance. Towe (Chase's initial counsel) testified that he *may* have reviewed these documents but that in any event he did so "quickly," because his clients had already flagged the important documents.

¶40 Faced with irreconcilably conflicting expert testimony, the District Court had to decide which expert provided a more persuasive opinion concerning the reasonableness of Bearpaw's claimed fees. The District Court found Lee's testimony more credible than Fain's testimony and it awarded an amount slightly lower than that which Lee deemed reasonable—$79,107.50. "[W]itness credibility and the weight accorded testimony are within the province of the District Court." *Chamberlin*, 277 Mont. at 207, 921 P.2d at 1242. Given the fact that Bearpaw had to consult with multiple individual clients, we cannot say that the District Court abused its discretion in awarding Bearpaw all of the fees it claimed for client conferences. While Fain's report suggests that Bearpaw has claimed fees for general association matters, the evidence that he provides of such is tenuous and incomplete. If, upon closer examination, the court determines that these claimed expenses were not in fact incurred in litigating this matter, they should not be charged to Chase. We cannot say that the District Court abused its discretion in according greater credibility to the testimony of Lee and adopting his recommended figure, albeit with slight modification.

21

¶41 Nevertheless, the District Court did err in awarding fees-for-fees—totaling $15,494[4]—without determining whether those fees were incurred in establishing the entitlement to fees or in establishing the reasonable amount of fees. The District Court could not, pursuant to the terms of the Declaration, order Chase to compensate Bearpaw for fees incurred in establishing the proper amount of fees. Consequently, it abused its discretion in awarding Bearpaw *all* of the legal costs it had incurred in litigating the issue of attorney fees without making any effort to ascertain the specific source of those costs. Likewise, the District Court abused its discretion in awarding Bearpaw $5,777 for expenses it incurred in litigating the issue of Towe's withdrawal. We reverse and remand for a proper determination of the amount of fees, particularly fees-for-fees, that Bearpaw may recover.

## CONCLUSION

¶42 The District Court had authority to rule on Bearpaw's motion for attorney fees on August 13, 2004. The District Court properly awarded fees incurred by Bearpaw in defending its first appeal before this Court and in its initial proceedings in the District Court (excepting those expenses related to the withdrawal of Towe). The District Court properly awarded attorney fees incurred by Bearpaw in establishing its entitlement to fees. The District Court erred, as a matter of law, in awarding Bearpaw the fees that it

[4]Lee testified that Bearpaw incurred $7,142 in post-appeal expenses through July 26, 2004. Leonard Smith testified that Bearpaw incurred an additional $8,352 in fees during August and September. Because the sole issue litigated on remand was the question of attorney fees, we assume that Bearpaw incurred these fees either in establishing its entitlement to fees, or in establishing a reasonable amount of fees.

22

incurred in establishing the compensable *amount* of attorney fees. The District Court also erred, as a matter of law, in awarding Bearpaw fees that it incurred in litigating the issue of Towe's withdrawal as Chase's attorney.

¶43    We affirm in part, reverse in part, and remand for further proceedings concerning the amount of attorney fees that Bearpaw may recover consistent with this opinion.


                                          /S/ W. WILLIAM LEAPHART



We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE