FILED

08/15/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0327

DA 16-0327

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 197

BONNIE BALLOU, Individually as General Partner
of L O Ranch Limited Partnership, and L O RANCH
LIMITED PARTNERSHIP, a Montana Limited Partnership,

       Plaintiffs and Appellants,

  v.

WILLIAM WALKER, Individually as Former General
Partner of L O Ranch Limited Partnership,

       Defendant, Appellee and Cross-Appellant.

WILLIAM WALKER,

       Counterclaimant, Appellee and Cross-Appellant,

  v.

BONNIE BALLOU,

       Counterclaimant and Appellant,

    and

DORAN PRIEWE,

       Third Party Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                In and For the County of Carter, Cause No. DV-6-2014-5
                Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

               Michael E. Begley, Jessica T. Fehr, Afton E. Ball, Jordan W. FitzGerald,
               Moulton Bellingham PC, Billings, Montana
               (*Attorneys for Bonnie Ballou and L O Ranch Limited Partnership*)

               Erica D. Griffith, Krutzfeldt & Jones, PLLP, Miles City, Montana
               (*Attorney for Doran Priewe*)

For Appellee:

    Michelle M. Sullivan, Michael A. Monson, Holland & Hart, LLP, Billings, Montana

Submitted on Briefs:  May 17, 2017

Decided:  August 15, 2017

Filed:

Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Bonnie Ballou (Ballou) appeals the judgment entered after a bench trial in the Sixteenth Judicial District Court, Carter County, that invalidated her attempt to expel her twin brother William Walker (Walker) from the family's limited liability partnership and which dissolved the partnership between them. Walker argues the court correctly preserved his partnership interest before ordering the partnership's dissolution. He counterclaims, however, on the issue of attorneys' fees, arguing that although the partnership agreement provided for an award of such fees to the party prevailing in litigation concerning partnership matters, Ballou's motion to recover those fees was deemed denied 60 days after the motion was filed. He claims the District Court was deprived of authority to consider the motion once it was deemed denied, but nevertheless awarded the fees to Ballou. This litigation thus presents the following issues on appeal:

> *1. Whether the District Court erred by concluding Walker was not subject to the buy-out provisions of the partnership agreement and dissolution was necessary.*

> *2. Whether the District Court was divested of its authority to award attorneys' fees more than 60 days after the motion for fees was filed.*

¶2 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Twin siblings Bonnie Ballou and William Walker were the principals in L O Ranch Limited Partnership (L O), a family partnership meant at its inception to steward a family ranch and its real property located in eastern Montana for multiple generations. L O's substantial holdings consist primarily of approximately 14,800 acres of real

3

property near Alzada, Montana. The twins' interests in the partnership were uneven. When this litigation began, Walker held a 1.00% general partner interest and a 52.25% limited partner interest, for a total holding of 53.25%. Ballou's interests were a 0.50% general partner interest and a 46.20% limited partner interest,[1] for a total holding of 46.70%. They acquired their partnership interests from inheritance, capital contributions, intervivos gifts from their mother, and litigation against their brothers. When she died, the twins' mother, Eunice Walker, held her shares of the partnership in trust. Her will directed that the trust shares be distributed equally between her five children. After Eunice Walker died and her shares were distributed according to her testamentary wishes, Ballou and Walker wanted the partnership to continue holding the land and operating the ranch. The other siblings wanted to liquidate their holdings.

¶4    Following litigation, the siblings entered into an agreement whereby Ballou and Walker would buy out the remaining siblings' interests by securing a loan from Pinnacle Bank (Pinnacle) for $737,986.06. Pinnacle approved the loan with a promissory note payable over 25 years, and with Ballou and Walker named individually as the borrowers, since they were receiving the partnership interests purchased. Pinnacle secured the note through a mortgage on lands L O owned in Carter County, Montana and through a continuing commercial guaranty that listed Ballou and Walker individually as borrowers,

---

[1]  Lawyers though we are, our math is correct. The percentages do not equal 100, but the missing interest was lost in the course of succession and litigation, not our error. The District Court, in its Findings of Fact and Conclusions of Law, noted that, "[s]omewhere, a .5% general partner interest has disappeared." Careful readers will of course realize that the District Court correctly noted the discrepancy, but erred in its mathematical expression of the amount. The missing interest is in fact 0.05%—five hundredths of a percent, not five tenths of a percent.

4

and L O as the guarantor. The guaranty gave Pinnacle the right of setoff against any accounts the Partnership maintained at Pinnacle. Accordingly, L O established a Pinnacle account for partnership operations. Ballou and Walker each had full access to this account, including account statements, online access, deposits, and withdrawals. The note was to be paid in 49 equal semi-annual installments of $24,738.60 and a slightly higher final payment. Ballou and Walker agreed that each was to pay one-half of the note's semi-annual installment, resulting in a semi-annual payment per person of $12,369.30.

¶5 The timing of the note intentionally coincided with payments L O was to receive under a lease agreement L O had recently negotiated with Ballou's alter-ego sheep-ranching business, Ballou Angus. Walker anticipated that income from the lease and from L O's other operations would provide him and Ballou both with sufficient partnership distributions to pay the note. L O deposited the annual Ballou Angus lease payment on February 27, 2013, for $42,988.50. Walker wrote a check to himself for $22,891.38 on July 3, 2013, from the L O account at Pinnacle, to pay, among other things, his part of the semi-annual installment due on the Pinnacle promissory note. Based on his L O 53.25% partnership interest, Walker considered this amount to be his rightful distributive draw since the draw reflected exactly 53.25% of Ballou Angus's total lease payment in February.

¶6 The partnership agreement (Agreement) that created L O governed partner draws. The Agreement distinguished between general partners and limited partners, giving general partners management powers and responsibilities that limited partners did not

5

have.  The Agreement noted in its Definitions section that references to a "Partner," were meant to encompass both limited and general partners.  Section 9.8 of the Agreement governed "Partner Draws," and provided that "[a] Partner, with the consent of the General Partners, may take a draw upon the Partner's share of anticipated distributions from the Partnership.  Such draws may be taken after a determination of distributions for Partners . . . if the General Partners agree."  Section 9.5 governed distributions and established that "General Partners may . . . distribute to the Partners Partnership Net Profits and net proceeds . . . as the General Partners, in the exercise of their reasonable judgment find appropriate. . . .  [A]ll distributions . . . shall be made in proportion to their respective Percentage interest."  Ballou did not agree to Walker's $22,891.38 draw and no evidence in the record shows Walker ever informed Ballou he was withdrawing these funds.  Although Walker's withdrawal accorded with his percentage interest, Walker did not withdraw and distribute a payment to Ballou proportional to her partnership interest percentage.  Neither did he offer to do so.  Although Walker held a majority interest in the partnership and the District Court determined that he acted completely in good faith, never attempting to hide or misrepresent this payment, the court found in two separate Findings of Fact and Conclusions of Law that his self-payment without notice to Ballou constituted self-dealing, and should be considered a "Withdrawal Event" under the Agreement.  Walker did not dispute the finding on appeal.

¶7      Ballou discovered Walker's payment in November of 2013, when she reviewed the partnership account with L O's banker at Pinnacle.  Up to that point, she and Walker had continued operating L O by engaging in various enterprises suitable to its holdings:

6

ranching, haying, pasture leasing, and the like. She did not ask Walker about his payment when she discovered it, but instead continued operating L O with him through July of 2014. The twins' relationship as partners deteriorated steadily. Their internecine quarreling caused the District Court to find their actions were the product of an "inability of the two general partners . . . to communicate with each other on issues, openly discuss resolution of the issues, and arrive at a mutually agreeable result . . . . [Their actions] were the product of distrust, unilateral actions, non-communication, and jockeying for advantageous positions, and indicative of a dysfunctional partnership relationship."

¶8     Ballou, acting as both a limited and general partner, commenced proceedings to remove her brother on July 10, 2014, by written consent in lieu of a formal partnership meeting. She meant to remove Walker as general partner under section 12.8 of the Agreement. That section allowed for the removal of a general partner for "improper self-dealing with the Partnership assets[.]" Section 12.8 instructed that removed general partners would have no further responsibility for the management of the partnership. She then approved a transfer of a 0.5% limited partnership interest to her son, Doran Priewe, which the District Court upheld as a valid stratagem under the Agreement. That same day, she acted again by written consent, this time to expel her brother from the partnership as a limited partner and pay him $1.00 for his 53.25% interest. The District Court, in its first Findings of Fact and Conclusions of Law, concluded that Ballou's efforts to divest her brother of his limited partnership interest and pay him only a dollar for it had failed, but that she had successfully removed him as a general partner and converted his general partnership interest into a limited one. The court reasoned in part

7

that Ballou had not strictly complied with Section 12.8 of the Agreement, which stated that "Unless all the other Partners also vote to expel the General Partner from the Partnership [after removal], *the removed General Partner shall automatically become a Limited Partner of the Partnership.*" (Emphasis added). The court concluded that Ballou's omission of such a vote to expel Walker did not comply with Section 12.8's requirements for a general partner's expulsion. Instead, her Consent to Action, the document drafted to formalize Walker's expulsion, purported to expel him under Section 15.3 of the Agreement. Section 15.3, the court found, required Ballou to meet a burden of proof that Walker had violated the Agreement. The court concluded that since Walker was now only a limited partner, and since the Agreement did not impose duties or responsibilities on limited partners, he no longer had a fiduciary duty or obligation to the partnership or to any other partner under the Agreement. Absent a violation of fiduciary duty under the Agreement, grounds did not exist for Ballou to expel Walker as a limited partner and her Consent to Action under Section 15.3 had no effect. The court further found that Ballou's tender of $1.00 for Walker's interest, and the Agreement's provision upon which it was based, was an unconscionable and void attempt to fix liquidated damages, in violation of § 28-2-721, MCA.

¶9 The District Court's final findings again noted the acrimony between Walker and Ballou, particularly that their relationship had deteriorated beyond repair since the two of them had assumed ownership of L O in 2013. Walker and Ballou's acrid relationship had degenerated into "moves and countermoves, claims and counterclaims, distrust, non-communication, and each party attempting to operate the partnership to best meet

their own personal interest." The court also found that Ballou, in her capacity as sole general partner, was now in "a position to dominate the Partnership to the detriment of [Walker]," even though he retained a majority interest in the partnership. As an example, the District Court observed that Ballou had withheld previously planned distributions despite having funds available to make them, causing Walker to default on his Pinnacle loan payments. Accordingly, the court found L O should be dissolved and ordered its dissolution in its Order, Judgment and Decree, as it was no longer reasonably practicable to carry on the partnership's activities in conformity with the Agreement.

¶10 Following the District Court's Order, Judgment and Decree, Ballou filed two relevant motions on behalf of L O. The first was a Rule 54 Motion for Attorneys' Fees and Costs. The other was a Rule 52 Motion for Amended or Additional Findings. She filed both of these motions after the resignation of Judge Huss, who had presided over the prior stages of this matter and written both sets of Findings of Fact and Conclusions of Law and the court's Order, Judgment and Decree mandating dissolution of the partnership. The motions thus came before Judge Hayworth, who replaced Judge Huss. Judge Hayworth granted Ballou's request for attorneys' fees and denied the motion to amend. Each motion will be addressed in turn.

## STANDARDS OF REVIEW

¶11 A district court's conclusions of law are reviewed on appeal for correctness. A district court's interpretation of a contract is a question of law that we also review for correctness. We review the factual findings of a trial court sitting without a jury to determine if the findings are clearly erroneous. *Total Indus. Plant Servs. v. Turner Indus.*

9

*Grp., Ltd. Liab. Co.*, 2013 MT 5, ¶ 22, 368 Mont. 189, 294 P.3d 363. A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 44, 322 Mont. 133, 95 P.3d 671.

¶12 We review an order concerning attorneys' fees for an abuse of discretion. *Total Indus.*, ¶ 22. But whether a district court has jurisdiction to rule on a matter is a question of law that we review to determine whether the district court had authority to act. A court exceeds jurisdiction through acts in excess of the defined power of a court, whether that power be defined by constitutional provisions, express statutes, or rules developed by the courts. *Green v. Gerber*, 2013 MT 35, ¶ 12, 369 Mont. 20, 303 P.3d 729.

## DISCUSSION

¶13 *1. Whether the District Court erred by concluding Walker was not subject to the buy-out provisions of the partnership agreement and dissolution was necessary.*

¶14 Ballou argues that Judge Hayworth's analysis in his Order Denying Partnership's Rule 52(b) Motion for Amended or Additional Findings (Denial of Amended Findings) is flawed and merits our review. In its Denial of Amended Findings, the District Court addressed possible shortcomings in Judge Huss's order because it "did not explicitly set forth the analysis after concluding that Walker became a limited partner whom Ballou failed to expel." The court reasoned that Judge Huss's findings need not be amended because Section 16 of the partnership Agreement did not come into play unless and until a *withdrawing* Partner [Walker] requests a buyout under Section 16 by giving written

10

notice of a Withdrawal Event. Under this reasoning, the withdrawing partner has the option to trigger a buyout of his own interest. Thus, even though Walker was found to have participated in a Withdrawal Event under Section 15.2, Ballou could not forcibly buy him out because he had never provided L O with written notice that he wanted his interest purchased. In the court's analysis, Walker's interest following the withdrawal event and his subsequent removal as general partner was therefore that of a limited partner who could be bought out, but only when he so chose and so indicated by written notice. The court made no further findings on the point.

¶15 An existing partnership agreement controls the rights and duties of partners in a partnership. *In re Estate of Bolinger*, 1998 MT 303, ¶ 50, 292 Mont. 97, 971 P.2d 767; *see also* § 35-10-106, MCA. "A partnership agreement is essentially a contract between the partners . . . to be interpreted and applied in accordance with principles of contract law." *Bolinger*, ¶ 54. A contract must be interpreted in such a way that it is lawful, operative, definite, reasonable, and practicably effectual without contravening the intention of the parties. Section 28-3-201, MCA. The language of a contract governs its interpretation when the language is clear, explicit, and without absurdity. *Whary v. Plum Creek Timberlands, L.P.*, 2014 MT 71, ¶ 10, 374 Mont. 266, 320 P.3d 973.

¶16 The District Court incorrectly interpreted the Agreement's language in Section 15.2 governing Withdrawal Events, which led to an unreasonable result, an untenable positioning of the parties, and the court's ultimate conclusion that the partnership must be dissolved. The relevant portion of Section 15.2 is critical to our analysis.

A "Withdrawal Event" occurs when a General Partner is removed as a General Partner . . . . If a Withdrawal Event occurs with respect to a Partner, the withdrawing Partner ceases to be a Partner of the Partnership and will be treated as an Assignee under this Agreement until the withdrawing Partner's Partnership Interest is valued and purchased as provided in Section 16 of this Agreement or the withdrawing partner is readmitted as a full Partner with the written consent of all the General Partners.

The District Court stated that "the finding of a Withdrawal Event under Section 15.2 does not inevitably lead to a conclusion of law (interpretation of the Partnership Agreement) that Ballou has the option to buy Walker out under Section 16." We disagree. Section 15.1 provides that "[i]f a Withdrawal Event occurs with respect to a General Partner, its General Partnership Interest shall be converted to a Limited Partnership Interest." We agree with the court's analysis that removal of a General Partner is thus a Withdrawal Event that converts the General Partner to a Limited Partner. The District Court found, and it is not disputed on appeal, that Walker engaged in self-dealing, which ultimately led to his removal as a general partner. We disagree, however, with the District Court's conclusion that 15.2 does not support a mandatory buyout of that partner's interest. The relevant portion of Section 15.2 states that, "[i[f a Withdrawal Event occurs with respect to a Partner, the withdrawing partner *ceases to be a Partner of the Partnership* and will be treated as an Assignee under this Agreement until the withdrawing Partner's Partnership Interest is valued and purchased as provided in Section 16 of this Agreement[.]" (Emphasis added). Section 15.2 does not distinguish between Limited Partners and General Partners; it applies to all partners and thus focuses on the cessation of the individual's involvement in the enterprise, not simply removing their role in

12

management. We conclude that this language demonstrates that removal of the individual from partnership is compulsory.

¶17 The District Court concluded that this clause is given effect by looking to Section 16 to determine the withdrawing partner's status, observing that determining whether a removed General Partner is treated as a Limited Partner or as an Assignee requires a close reading of Section 16, which "doesn't come into play unless and until a withdrawing Partner requests a buy-out under Section 16 by giving written notice[.]" But an analysis of the language in Section 15.2 reveals that is not an accurate interpretation. The clause operates independently of Section 16 and specifies that a withdrawing partner ceases to be a "Partner of the Partnership," and that his interest is then to be valued and sold in accordance with Section 16. He is additionally to be treated as an assignee while the interest is valued. Section 15.2 thus contemplates Section 16 as the mechanism for determining the value of the withdrawing Partner's interest, not for determining whether he may be bought out at all. Section 15.2's designation of Section 16 as the means of determining value is conclusive—there would be no need to set a valuation mechanism if the withdrawing partner's buyout were not anticipated as part of the withdrawal process and mandatory as applied to the withdrawing partner—and optional only as applied to the partnership. This reasoning comports with the language of Section 16.1:

> If a Withdrawal Event occurs with respect to a Partner, the Partnership shall have the right to liquidate the withdrawing Partner's Partnership Interest or the remaining Partners shall have the right to purchase such Partnership Interest. This Section 16 provides the Partner's agreed terms for such liquidation or purchase. If this right to purchase is exercised, *the withdrawing Partner* or such Partner's estate . . . *must liquidate or sell the*

*withdrawing Partner's Partnership Interest to the Partnership or remaining Partners. . . .*

(Emphasis added).

¶18 The clear language of the clause requires the withdrawing partner to sell or liquidate his interest to the partnership or partners. The District Court's determination that Section 16 does not apply "unless and until a withdrawing Partner requests a buy-out under Section 16 by giving written notice upon a Withdrawal Event" is therefore premised on a misinterpretation of the agreement. Walker is not entitled to withhold written notice of the Withdrawal Event to maintain his interest as a limited partner, as the District Court concluded. Rather, he must tender his interest for valuation and subsequent purchase in compliance with Sections 15.2 and 16.1, using Section 16 for valuation of the interest. To that end, we agree with the District Court that Walker was not expelled and so is not subject to the $1.00 buyout provision of Section 16.7. His interest is instead subject to the terms of Sections 16.1 and 16.6, which together require, among other things, that his interest is to be valued at fair market value at the time the Withdrawal Event occurred.

¶19 Having found that Walker's interest is subject to the Agreement's buyout provisions, we conclude that judicial dissolution of the partnership is not necessary. The District Court's order requiring dissolution envisioned a future for the partnership, if it remained intact, in which Walker would have remained a majority limited partner with standing to further litigate his grievances with Ballou and as such, an impediment to the partnership's operations and management. The District Court foresaw culpability for

14

Ballou too, observing that she had now, as the sole general partner, the unchecked ability to aggrieve Walker by withholding distributions, especially those originally contemplated for use as payments on the Pinnacle promissory note. Walker's buyout would remove not only his standing to litigate a potential breach of duty by Ballou, but would also curtail any further acrimony between the siblings over how the partnership should be run—Walker would no longer have any interest in the partnership. With one of the partners removed and the accompanying acrimony between the partners gone, operating the partnership in conformity with the partnership agreement becomes practicable, which obviates the need for judicial dissolution.

¶20 *2. Whether the District Court was divested of its authority to award attorneys' fees more than 60 days after the motion for fees was filed.*

¶21 Although Judge Hayworth issued an order on March 8, 2016, to stay the timeline for ruling on the motion, the District Court did not rule on L O's motion for Attorneys' Fees and Costs until more than 60 days had passed from the day the motion was entered. Walker argues on appeal that the passage of 60 days without a ruling following the entry of a motion for Attorneys' Fees filed subsequent to a judgment deprives a district court of the jurisdiction necessary to rule on the motion. Walker asks that we void the District Court's award of attorneys' fees entered on May 16, 2016, since the passage of more than 60 days deprived the court of jurisdiction to issue the order.

¶22 A judgment is effectively entered when the clerk of court files it. *Chase v. Bearpaw Ranch Ass'n.*, 2006 MT 67, ¶ 19, 331 Mont. 421, 133 P.3d 190. This Court treats a motion for attorneys' fees that is filed after a judgment is entered as a motion to

15

alter or amend the judgment. *Chase*, ¶ 18; *Associated Press v. Crofts*, 2004 MT 120, ¶ 36, 321 Mont. 193, 89 P.3d 971. A motion to alter or amend a judgment not ruled upon within 60 days of its filing date must be deemed denied. M. R. Civ. P. 59(f);[2] *Associated Press*, ¶ 36. Motions to alter or amend a judgment are within the purview of M. R. Civ. P. 59(e). A court must not extend the time to act under Rule 59(e). M. R. Civ. P. 6(b)(2). "Rule 59, M. R. Civ. P. contains a mandatory jurisdictional time limitation, to which this Court strictly adheres." *Associated Press*, ¶ 37. A district court need not hold all required hearings within 60 days of the motion, and need not specify how the judgment will be amended within sixty days of the motion, but it must rule, within sixty days, on whether it will amend the judgment. *Chase*, ¶ 20. When Rule 59 applies, this Court considers whether the district court was divested of its authority to award attorneys' fees. *Chase*, ¶ 20. When the District Court fails to rule on a motion for attorneys' fees within the time limitations of Rule 59, it has no jurisdiction to enter a later award on the matter. *Associated Press*, ¶ 37.

¶23 Ballou filed a motion for attorneys' fees pursuant to M. R. Civ. P. 54(d) on January 14, 2016, after the judgment was entered and filed on December 30, 2015. Since the motion was entered subsequent to judgment, her motion is treated on review as a Rule 59(e) motion to alter or amend the judgment. Although the District Court entered an order staying the timeline for ruling on the motion, M. R. Civ. P. 6(b)(2) prohibits the court from extending the time to act on a Rule 59(e) motion. The court's order staying

---

[2] Effective July 1, 2017, Rule 59(f) has been amended to allow the court to extend the time to rule to 120 days from the motion's filing date.

the timeline did not include a ruling on whether it would amend the judgment. Without a ruling the parameters of Rule 59 thus apply to the motion; more than 60 days had passed without a ruling and the motion was deemed denied. Operating beyond the parameters and time limitations of Rule 59, the District Court did not possess the requisite jurisdiction and was therefore divested of its authority to enter the award.

## CONCLUSION

¶24 The judgment of the District Court determining Walker's partnership interest in L O could not be liquidated and bought out until he provided written notice to the partnership is reversed. The matter is remanded to the District Court for a hearing on the value of Walker's complete interest, subject to the parameters of the Partnership Agreement and consistent with this Opinion. The District Court's order mandating dissolution of L O and the winding up of its affairs is reversed. The partnership is permitted to continue operations subject to its compliance with applicable laws, regulations, and the terms of its Partnership Agreement. The District Court's order awarding attorneys' fees is reversed. The remainder of the District Court's judgment is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

17