This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39129**

**CUBA SOIL AND WATER
CONSERVATION DISTRICT,**

      Plaintiff/Counterdefendant-Appellee,

v.

**GRANITE RE, INC., as bond holder for
VIGIL CONTRACTING SERVICES, INC.;
and VIGIL CONTRACT SERVICES, INC.,**

      Defendants/Counterclaimants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
James A. Noel, District Court Judge**

TMP Legal, LLC
Timothy M. Padilla
Albuquerque, NM

for Appellee

Calvert – Menicucci, P.C.
Sean R. Calvert
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendants Vigil Contracting Services, Inc. (Vigil) and Granite RE, Inc. (Granite) appeal the district court's judgment awarding damages to Plaintiff Cuba Soil and Water Conservation District based on Vigil's breach of a construction contract. Defendants argue the district court erred by (1) holding Vigil liable for the cost of correcting deficient

work and relying on certain expert testimony to calculate the cost of correcting the work; and (2) holding Granite liable for its obligations, as surety, under a performance bond. We affirm.

**BACKROUND**

**{2}** This case arises from a construction dispute. In October 2011, Plaintiff contracted with Vigil, a contractor, to erect an office building and make site improvements for Plaintiff for $875,386.77. The construction contract required Vigil to obtain a performance bond (the bond), which Vigil purchased from Granite.

**{3}** Construction proceeded, and, after receiving a certificate of occupancy from the State, Plaintiff moved into the building in October 2012. In the meantime, the project's architect had created a "punch list" of items that needed correction and had concerns related to site compaction and final gradations at the site. These concerns were unresolved as of September 2012, and the architect never issued a final certificate for payment because work remained to be done. Plaintiff refused Vigil's final application for payment because of multiple deficiencies in Vigil's work, and in November 2013, Plaintiff demanded that Granite perform its obligation under the bond.

**{4}** Plaintiff sued Vigil and Granite, claiming that Vigil breached the Construction Contract[1] and owed payment for nonconforming work, and that Granite failed to fulfill its payment obligations under the bond. The district court determined that Vigil had substantially completed the work as defined in the Construction Contract in July 2012 and was entitled to its final payment. The district court also determined that Vigil had breached the Construction Contract and failed to substantially perform all its obligations, and awarded Plaintiff $169,500 to correct site work, concrete, and asphalt deficiencies. Finally, the district court determined that Plaintiff notified Granite as required by the bond and entered judgment "against Vigil and Granite." Defendants appeal.

**DISCUSSION**

**I.     Vigil's Liability**

**A.     The District Court Did Not Err in Determining That Vigil Was Liable for the Cost of Correcting Deficient Work**

**{5}** The district court determined that Vigil was entitled to its final payment under the Construction Contract but that Plaintiff was entitled to recover damages based on the cost to correct deficiencies in Vigil's work. Defendants acknowledge that Plaintiff may be entitled to damages for "imperfections in Vigil's performance," but argue the district court erred by awarding Plaintiff damages based on the cost of repair. Instead,

---

1The Construction Contract consists of the AIA Document A201, *General Conditions of the Contract for Construction* (2007) (General Conditions Document) and the AIA Document A101, *Standard Form of Agreement Between Owner and Contractor* (2007), as well as Supplemental General Conditions, Technical Specifications, Addendum No. 1 and Drawings.

Defendants contend, damages should have been based on the difference in value between the work called for in the contract and the value of the performance received. In support of this contention, Defendants point to language in the Construction Contract and the district court's finding that Vigil substantially completed the work, and argue the district court erred by not taking into account the impact of substantial completion on Vigil's liability. We are unpersuaded.

**{6}** Because Vigil and Plaintiff's agreement is governed by the Construction Contract, we look to terms of the contract to determine whether the district court erred in awarding damages based on the cost to correct deficient work. "Contract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803. "The primary objective in construing a contract is to ascertain the intent of the parties." *J.R. Hale Contracting Co. v. Union Pac. R.R.*, 2008-NMCA-037, ¶ 49, 143 N.M. 574, 179 P.3d 579 (internal quotation marks and citation omitted). "We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (alteration, internal quotation marks, and citation omitted).

**{7}** The General Conditions Document demonstrates an intent that the contractor (Vigil) remain liable to the owner (Plaintiff) for the cost of correcting defective work, regardless of whether the work was substantially complete. *See* General Conditions Document, *supra*, § 12.2.1 (providing that, before or after substantial completion, costs of correcting work rejected by the architect, including the cost of uncovering and replacement, shall be at the contractor's expense); *accord id.* § 12.2.2.1 (providing that if within one year after substantial completion of the work any of the work is found to be not in accordance with the requirements of the contract documents, and, after notice, the contractor fails to correct nonconforming work within a reasonable time, the owner may correct it in accordance with Section 2.4); *id.* § 2.4 (permitting, subject to certain requirements, the owner to carry out the work in the event the contractor defaults or neglects to carry out the work in accordance with the contract documents, and providing that the owner may (a) deduct the reasonable cost of correcting such deficiencies from payments due the contractor, or (b) if payments due the contractor are insufficient to cover the amount, requiring the contractor to pay the difference to the owner). These contract provisions correspond with New Mexico's approach to damages arising from defective or unfinished construction, which are typically calculated based on the reasonable cost of completing the construction called for in the contract. *See* UJI 13-850 NMRA comm. cmt.; *Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 60, 400 P.3d 290.

**{8}** Defendants, however, point to Sections 9.8.4 and 9.8.5 of the General Conditions Document to support their contention that damages should have been based on the difference in value between the work called for in the contract and the value of the performance received. These sections provide that the architect shall prepare a Certificate of Substantial Completion, General Conditions Document, *supra*, § 9.8.4, and

[t]he Certificate of Substantial Completion shall be submitted to [Plaintiff] and [Vigil] for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, [Plaintiff] shall make payment of retainage applying to such [w]ork or designated portion thereof. Such payment shall be adjusted for [w]ork that is incomplete or not in accordance with the requirements of the Contract Documents.

*Id.* § 9.8.5.

**{9}** As an initial matter, Defendants do not point to a Certificate of Substantial Completion issued by the architect in the record, the issuance of which is an apparent precondition to the applicability of Section 9.8.5. But even if we were to assume Section 9.8.5 applied, Defendants have not demonstrated that awarding damages based on the cost of correcting deficient work conflicts with this section. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). Defendants do not explain why the district court's determination that Vigil was entitled to its final payment but that Plaintiff was entitled to the cost of correcting deficient work is inconsistent with Section 9.8.5's language that payment of retainage shall be adjusted for incomplete or nonconforming work. Nor do Defendants address other provisions in the Construction Contract indicating an intent that Vigil remain liable for the cost of correcting defective work. Based on the foregoing, we conclude the district court did not err in awarding Plaintiff damages based on the cost to correct deficiencies in Vigil's work.

**B.      Defendants Failed to Preserve an Objection to Graeme Means' Testimony About His Estimates of Repair Costs**

**{10}** Graeme Means, a civil engineer, provided expert testimony on Plaintiff's behalf on a number of issues, including an estimate of the cost of repairing deficiencies he found at the construction site. We understand Defendants to present three different arguments as to why the district court erred in admitting Means' testimony on the cost to repair the deficiencies he identified: (1) Means was not qualified to testify regarding the cost of repairs; (2) his testimony was speculative; and (3) the testimony was unfairly prejudicial because he was not disclosed as a damages expert.

**{11}** We review the district court's rulings as to admissibility of expert testimony under Rule 11-702 NMRA for abuse of discretion. *Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 47, 384 P.3d 1098. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz*, 2013-NMCA-111, ¶ 11 (internal quotation marks and citation omitted). However, before we undertake such review, Defendants must establish that they preserved this issue for review by having made "a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield*

*Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. Additionally, Defendants must demonstrate that their objection to Means' testimony in district court was based on the same grounds that they now argue on appeal. *See Benz*, 2013-NMCA-111, ¶ 24. We conclude, as we further explain, that Defendants failed to preserve their objections to Means' testimony regarding his estimate of the cost to repair the deficiencies he identified at the site.

**{12}**    The district court awarded Plaintiff $169,500 to correct site work deficiencies, including "the removal of all the asphalt and exterior concrete, regrading and compacting the site and replacing the asphalt and concrete to achieve . . . positive drainage," as a portion of the damages awarded. The district court based this amount on the testimony of Means, who was hired by Plaintiff to review the construction site condition and prepare a report of his findings. The district court recognized Means as an expert in the area of grading, paving, and parking slopes without objection from Defendants. Means' 2014 report was admitted also without objection. Means testified, again without objection, regarding the deficiencies at the site and his estimate of the cost of repair. Plaintiff had sought as well to introduce Means' supplemental report and related photographs as an exhibit, but Defendants objected solely on grounds that the exhibit was not timely disclosed. The district court agreed with Defendants and refused to admit the report and photographs at that time.[2]

**{13}**    Defendants have not directed us to any portion of the record where they raised specific and substantive objections to Means' testimony regarding his repair cost estimates. Further, our own review did not reveal any such objections.[3] "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. And by failing to invoke a ruling on the admissibility of Means' testimony regarding the repair costs, this Court is without a record on which we could make an informed decision regarding Defendants' argument. *See Progressive Cas. Ins. Co. v. Vigil*, 2018-NMSC-014, ¶ 31, 413 P.3d 850 (noting that one of the purposes of the rule of preservation is to create a record to allow for meaningful appellate review). Accordingly, we will not consider this issue further.

## II.     Granite's Liability: The District Court Did Not Err in Determining That Granite Was Liable for Its Obligations Under the Bond

**{14}**    We turn now to the liability of Granite, the project's surety. The Construction Contract required Vigil to provide a bond, which Vigil purchased from Granite. The bond provides that Vigil and Granite "are held and firmly bound unto" Plaintiff, in the amount of the original Construction Contract price "for the payment whereof [Vigil] and [Granite]

---

[2]The supplemental report and photographs were admitted during Means' rebuttal testimony on day four of the trial, when he testified as a rebuttal witness. The district court allowed their admission after Means provided appropriate foundational testimony.

[3]Defendants, in fact, relied on Means' cost of repair estimate in their own proposed findings and conclusions to support their contention that Plaintiff failed to mitigate damages.

bind themselves . . . jointly and severally." The district court entered judgment "against Vigil and Granite." Defendants argue the district court erred by entering judgment against Granite, contending that Granite's liability was not triggered under the terms of the bond.

**{15}** As the surety, Granite's liability is governed by the terms of the bond. *See State ex rel. Mountain States Mut. Cas. Co. v. KNC, Inc.*, 1987-NMSC-063, ¶ 12, 106 N.M. 140, 740 P.2d 690. A bond is a contract, and is therefore subject to the general law of contracts. *See id.* "Contract interpretation is a matter of law that we review de novo." *Rivera*, 2011-NMSC-033, ¶ 27. We construe obligations of sureties under bonds "strictly in favor of the beneficiaries." *Mountain States Mut. Cas. Co.*, 1987-NMSC-063, ¶ 12.

**{16}** The bond incorporates the Construction Contract by reference and imposes liability on Granite for Vigil's breach if two conditions exist. First, Vigil must have been *in default* of its performance obligations under the Construction Contract. Second, Plaintiff must have *declared* Vigil to be in default. In November 2013, Plaintiff sent a letter to Granite providing notice "pursuant to the . . . [b]ond" that Vigil had "defaulted and failed to complete the project." The letter noted that Vigil refused to complete or correct various items contemplated in the Construction Contract.

**{17}** Defendants do not dispute that Plaintiff's letter to Granite declared Vigil to be in default. Instead, Defendants argue Vigil did not default on its obligations under the Construction Contract. In support of this argument, Defendants contend (1) there can be no default under the bond absent a material breach of the Construction Contract, and there was no determination that Vigil committed such a breach; (2) there is insufficient evidence to support the district court's finding that Vigil failed to substantially perform its obligations; (3) the district court's findings that Vigil substantially completed the work yet failed to substantially perform its obligations conflict; and (4) Plaintiff did not terminate Vigil as required to trigger Granite's liability. We examine each argument in turn.

## A.      Materiality of the Breach

**{18}** Defendants argue there can be no default under the bond absent a material breach of the Construction Contract, and that there was no determination that Vigil committed such a breach. Assuming without deciding that default under the terms of the bond requires a material breach, the district court's findings demonstrate that Vigil committed such a breach.

**{19}** The district court found that Vigil failed to substantially perform all of its obligations under the Construction Contract. This finding of failure to render substantial performance equates to a finding of material breach. "Substantial performance is the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered." 15 Richard A. Lord, *Williston on Contracts* § 44:55 (4th ed. 2022). *Compare Shaeffer v. Kelton*, 1980-NMSC-117, ¶ 12, 95 N.M. 182, 619 P.2d 1226 ("[S]ubstantial performance in good faith will permit a recovery on the contract."), *with KidsKare, P.C.*

*v. Mann*, 2015-NMCA-064, ¶ 20, 350 P.3d 1228 ("A material breach of a contract excuses the non-breaching party from further performance under the contract."). Accordingly, Vigil's failure to render substantial performance equates to a finding of material breach.

## B.    Substantial Performance

**{20}**    Defendants next argue there is insufficient evidence to support the district court's finding that Vigil failed to substantially perform its obligations and contend their position is supported by an analysis of the factors our courts consider in determining whether a breach is material. We are unpersuaded.

**{21}**    As discussed, the district court's finding that Vigil failed to substantially perform its obligations under the Construction Contract equates to a finding of material breach. "The materiality of a breach is a specific question of fact." *KidsKare*, 2015-NMCA-064, ¶ 20 (alteration, internal quotation marks, and citation omitted); *accord* 17B C.J.S. *Contracts* § 1036 (2022) (stating that "[w]hether there has been substantial performance or a material breach of a contract is ordinarily a question of fact"). We therefore review the finding that Vigil failed to substantially perform its obligations for substantial evidence.[4] *Cf. Unified Contractor, Inc.*, 2017-NMCA-060, ¶ 36 (reviewing whether a breach of contract is material under a substantial evidence standard). In reviewing whether substantial evidence exists, we "view the evidence and draw all reasonable inferences in the light most favorable to the findings of the district court." *Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 57, 388 P.3d 998.

**{22}**    In the context of "building and similar contracts," the rule of substantial performance may apply where "there are slight omissions and defects, which can be readily remedied" and "the defects [are] not . . . so serious as to deprive the property of its value for the intended use." *See Plains White Truck Co. v. Steele*, 1965-NMSC-014, ¶ 13, 75 N.M. 1, 399 P.2d 642 (internal quotation marks and citation omitted)); *accord* 14 Lord, *supra*, § 42:4 (same). We conclude substantial evidence supports the district court's finding that Vigil failed to substantially perform its contractual obligations and explain.

**{23}**    In addition to erecting a building, the Construction Contract required Vigil to make site improvements, including drainage work and paving, in accordance with the Construction Contract plans. Based on the evidence introduced, the district court could have reasonably found that the deficiencies in Vigil's performance related to the site work were not easily remedied and serious enough to deprive the property of value for its intended use. *See Plains White Truck Co.*, 1965-NMSC-014, ¶ 13. To begin, evidence showed that the site failed to drain properly. The site drainage plan called for

---

4Although the district court mistakenly labeled its determination that Vigil failed to substantially perform its contractual obligations as a conclusion of law rather than finding of fact, the appellate court "is not bound by the labels of 'finding of fact' or 'conclusion of law' attached by the lower court." *In re McCain*, 1973-NMSC-023, ¶ 5, 84 N.M. 657, 506 P.2d 1204. We also note that Defendants refer to the district court's determination regarding substantial performance as a finding.

creating a below-grade rock swale (the swale) intended to control and convey local drainage from the area by transporting it to a ponding area. The swale was constructed above ground such that it was unable to capture water, rendering the flow line completely ineffective. Apart from creating drainage problems, the swale's defective construction impacted the property's intended use, *see id.*, as an educational facility, because the swale was to demonstrate how to collect water in a collection pond for cattle and horses.

**{24}** As to the site's overall drainage plan, the intent was to have consistent grades and positive drainage all the way across. Following the detection of rock, it was decided that the overall grade would be left at a slightly higher elevation to adjust for the rock but the general intent of the drainage design was to remain intact. After paving, however, evidence showed that most of the elevations on the west side of the parking lot had not been adjusted higher and were in fact *lower* than the elevations set forth in the original grading plan. The parking lot and roundabout did not achieve positive drainage, as intended, leading to areas of standing water on the pavement. As constructed, water flows back towards the building and accumulates in ponds in some of the parking spaces closest to the building.[5]

**{25}** The plans also called for concrete paving for sidewalks adjacent to the exterior of the building, which was to slope away from the building. Water from at least one downspout draining onto the sidewalk, however, drained back toward the building, indicating the intended slope was not achieved. The exterior concrete displayed numerous problems, including settlement adjacent to the building next to walls attributable to improper soil compaction, as well as uplift of concrete attributable to improper drainage.

**{26}** In addition to drainage failures, evidence showed other defects with the site work, including flaws with the entry road and the asphalt's concrete curb perimeter. The grading plan was not followed closely in the area of the entry road, in which the slopes appear much steeper than designed, rendering the slopes more subject to erosion. The design also included a concrete curb perimeter on the edge of paved asphalt surfaces, which developed abnormal cracking, apparently related to subgrade compaction.

---

[5]Defendants challenge two of the district court's findings related to the site's drainage: (1) that the general intent of the drainage design was to remain intact following discovery of rock, and (2) that the site as built did not drain as intended. As to whether the general intent of the drainage design was to remain intact, a letter Vigil received from its grading subcontractor states that, following a site walk, it had been decided the grade would be left at a slightly higher elevation but makes no mention of change to the general intent of the grade. The district court also heard testimony that the site walk participants determined it was possible to work over the rock. In addition, the architect testified that he had discussions with Vigil and Plaintiff where they reached an agreement "that they felt would work to get that swale to drain into the pond . . . pretty much the way the drawing showed"; there was "enough slope to get it to drain"; and the spot elevations sloped in the same general direction as the original design. Based on this evidence, the district court could have reasonably inferred that the general intent of the drainage design was to remain intact. *See Allred*, 2017-NMCA-019, ¶ 57. Regarding the district court's finding that the site did not drain as intended, the testimony of multiple witnesses supports this finding. *See id.*

**{27}** Summarizing the project's "as-built conditions," the civil engineer for the site grading noted erosion in multiple locations, settlement along the edges of curb and concrete, and multiple locations where there were depressions in asphalt paving. Evidence showed it would cost an estimated $169,500 to correct the site work, concrete, and asphalt deficiencies, over 19 percent of the contract sum. Viewing the evidence and drawing all reasonable inferences in the light most favorable to the district court's finding, *see Allred*, 2017-NMCA-019, ¶ 57, substantial evidence supports the finding that Vigil failed to substantially perform its contractual obligations.

## C.    Substantial Completion

**{28}** Defendants also challenge the district court's finding that Vigil failed to substantially perform its contract obligations based on the court's separate finding that Vigil substantially completed the work as defined in the Construction Contract. Defendants contend that in construction law there is generally no difference between substantial completion and substantial performance and, therefore, there can be no material breach required to trigger default under the bond once a construction project is substantially complete. Accordingly, Defendants argue, the district court's findings that Vigil substantially completed the work yet failed to substantially perform its obligations conflict, and it erred by failing to acknowledge the effect of substantial completion on Defendants' liability. We are unpersuaded.

**{29}** "We construe findings to uphold, rather than defeat, a judgment." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 31, 132 N.M. 459, 50 P.3d 554. Although our case law has equated substantial completion with substantial performance with respect to a contract to construct a building, *see Shaeffer*, 1980-NMSC-117, ¶ 12 ("A *building* is substantially completed when all of the essentials necessary to the full accomplishment of the purpose for which the building has been constructed are performed." (emphasis added)), we do not view the terms as having identical meaning in all circumstances. In addition to erecting the office building itself, the contract at issue here required Vigil to complete site work, including drainage work and paving. And as to this particular project, there is abundant evidence from which the district court could reasonably infer that, despite Plaintiff's ability to occupy or partially utilize the building, deficiencies in important aspects of the site work, including the site's drainage, could limit Plaintiff's future use or enjoyment of the project. *See* 5 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor Construction Law* § 18:12 (2022) (stating that defective work remaining after substantial completion does not constitute a material breach of the contract "unless the work subsequently is found to limit the owner's future use and enjoyment of the project"). Evidence indicated that certain defects in the site work were progressively deteriorating and that drainage issues with the swale frustrated the site's purpose as an educational facility. Based on the foregoing, we conclude the district court's findings of substantial completion and failure to substantially perform do not conflict under the circumstances of this case. And in any event, "only the trial court is permitted to weigh the testimony, determine credibility, and reconcile inconsistent or contradictory statements." *Shaeffer*, 1980-NMSC-117, ¶ 13, *see also Normand ex rel.*

*Normand v. Ray*, 1990-NMSC-006, ¶ 35, 109 N.M. 403, 785 P.2d 743 ("Findings of fact are to be liberally construed so as to uphold the judgment of the trial court.").

## D.    Termination

**{30}**    Finally, Defendants argue that Granite's liability under the bond was not triggered because Plaintiff did not terminate Vigil. Defendants, however, have not demonstrated that the district court clearly erred in determining otherwise. *See Corona*, 2014-NMCA-071, ¶ 26. Defendants do not develop this argument with analysis of the language of the AIA A311 bond at issue. The bond does not state that Vigil's termination is required to trigger Granite's liability, and Defendants do not explain why we should read a requirement into the bond that is not there. *See Casias v. Dairyland Ins. Co.*, 1999-NMCA-046, ¶ 11, 126 N.M. 772, 975 P.2d 385 (stating that courts apply the plain meaning of the contract language as written and will not rewrite a contract for the parties); *cf.* 4A Bruner & O'Connor, *supra*, at § 12:16 nn.3, 5 (noting that the AIA A312 bond provides that, in addition to declaring a default, the owner must terminate the contract). Construing Granite's obligations under the bond "strictly in favor" of Plaintiff, *see Mountain States Mut. Cas. Co.*, 1987-NMSC-063, ¶ 12, Defendants have not demonstrated that actual termination of Vigil was required to trigger Granite's liability. For these reasons, the district court did not err in determining that Granite was liable for its obligations under the bond.

## CONCLUSION

**{31}**    Based on the foregoing, we affirm.

**{32}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**